[Civil No. 622.    Filed April 16, 1898.]

[53 Pac. 201.]

R. E. DAGGS et al., Defendants and Plaintiffs in Error, v. PHŒNIX NATIONAL BANK (a corporation), Plaintiff and Defendant in Error.

1. APPEAL AND ERROR—ASSIGNMENTS OF ERROR—STATUTES AND RULES MANDATORY—ASSIGNMENTS MUST BE SPECIFIC.—The statutes and rules of this court on the subject of assignments of error are imperative, and must be observed. It is our duty to examine into such alleged errors, and only such, as are distinctly pointed out in the record.

2. BANKS AND BANKING—NATIONAL BANKS — INTEREST — REV. STATS. U. S. 1878, SECS. 5197, 5198; REV. STATS. ARIZ. 1887, PARS. 2161, 2162, CITED AND CONSTRUED—MAY CHARGE ANY RATE AGREED UPON.—Section 5197, *supra,* provides that national banks may charge interest at the rate allowed by the territory where that bank is located, and no more, and that where no rate is fixed by such laws the rate shall be seven per cent. Section 5198, *supra,* provides that

the charging a rate of interest greater than is allowed by the preceding section, when knowingly done, shall be deemed a forfeiture of the entire interest agreed to be paid. · Paragraph 2161, *supra,* provides that when there is no express agreement fixing a different rate seven per cent shall be allowed. Paragraph 2162, *supra,* provides that the parties may agree in writing for the payment of any rate of interest whatever on money due or to become due on any contract. Under these statutes a national bank in Arizona is privileged to charge and collect any rate of interest which may be agreed upon, and is as free to act in this regard as are banks organized under local laws or as individuals living in the territory.

3. PLEADING—COUNTERCLAIM — VERIFICATION — SUFFICIENCY OF UNVERIFIED DENIAL—EXCEPT AS TO MATTERS REQUIRED BY REV. STATS. ARIZ. 1887, PAR. 735, TO BE DENIED UNDER OATH.—An unverified general denial to a verified counterclaim is sufficient to put the defendant on proof, except as to any matter therein pleaded, which, by statute, *supra,* is required to be denied under oath.

4. SAME—SAME—SAME—VERIFIED ALLEGATION OF ASSIGNMENT IN WRITING ADMITTED BY FAILURE TO DENY UNDER OATH—REV. STATS. ARIZ. 1887, PAR. 735, SUBD. 5, CONSTRUED.—An allegation in a verified counterclaim that a note therein set up was assigned by the plaintiff to the defendant by an instrument in writing is admitted, under statute, *supra,* by failure to verify the denial thereof.

5. CHOSES IN ACTION — NON-NEGOTIABLE INSTRUMENT — ASSIGNOR AS SURETY—WHEN HELD—DUE DILIGENCE—REV. STATS. ARIZ. 1887, PARS. 123, 124, CITED.—While our statutes recognize the right of an assignee to hold the indorser of a non-negotiable chose in action as surety for the payment of the same, no recovery is authorized, without it be shown that the assignee has used due diligence to collect the same. Statute, *supra,* cited.

6. PLEADING — COUNTERCLAIM — SUFFICIENCY. — A counterclaim, to be good, must contain every allegation which would be needed in a complaint founded on the same cause of action.

7. SAME—SAME—SAME—AGAINST ASSIGNEE OF NON-NEGOTIABLE NOTE— MUST ALLEGE DILIGENCE IN COLLECTING—WHERE IT APPEARS THAT THERE WAS SECURITY IT MUST ALLEGE AN ATTEMPT TO ENFORCE SAME AND FAILURE.—Where a counterclaim only alleges that plaintiff assigned to defendant a non-negotiable promissory note, past due, and that at the time of the assignment the makers were insolvent, and were still insolvent, and that the same had not been paid, it fails to state a cause of action. No allegation is made that due diligence was used, as is required by statute, or that any effort was made to collect the same, which omission is doubly fatal, for the reason that it appears on the face of the note that it was secured by chattel mortgage. With this appearing, the mere allegation of the insolvency of the maker was not sufficient to charge the indorser as surety without an allegation of the exercise of due

diligence to collect the same and to enforce the security, and a failure after such effort to collect.

8. PLEADINGS—JUDGMENT ON—DENIAL—SUFFICIENCY — FACTS PLEADED INSUFFICIENT TO SUPPORT JUDGMENT.—A motion for judgment upon a verified counterclaim because there is no verified reply thereto is properly denied where it appears that there is an unverified general denial which puts in issue some of the allegations thereof, and where it further appears that, had no reply been filed, the facts pleaded were not sufficient to support a judgment therein.

AFFIRMED.   177 U. S. 549; L. Ed. 44: 882.

ERROR to the District Court of the Third Judicial District in and for the County of Maricopa.   A. C. Baker, Judge.   Affirmed.

The facts are stated in the opinion.

A. J. Daggs, for Plaintiffs in Error.

A national bank may not charge more than seven per cent interest on any contract they may enter into in this territory. As it has contracted for ten per cent interest in this case, it has forfeited its right to recover any interest on the three notes sued on. If there is no rate fixed by law in this territory, then the laws of the United States fixing the rate to be charged by national banks governs, and contracting for a higher rate forfeits the right to collect. *Danforth* v. *Bank,* 48 Fed. 271; *Johnson* v. *Bank,* 74 N. Y. 329, 30 Am. Rep. 302. In *Danforth* v. *Bank, supra,* Atchison, J., in speaking of the operation of the United States statute (secs. 5197, 5198) upon national banks, said: "The clause operated directly upon the bank and affects its power. The statutory franchise to recover interest is lost by the commission of the illegal act. Being without right to demand interest, the offending bank cannot recover interest against any one." Also, *Bank* v. *Johnson,* 104 U. S. 271.

The counterclaim of plaintiffs in error, of $1,145.65, duly verified, is not denied under oath; it stands admitted as correct. Judgment should have been given on that counterclaim. Rev. Stats. Ariz., 671, 735, subd. 11.

The counterclaim of plaintiffs in error, of the five-thousand-dollar note is a non-negotiable note on its face. Our statute (par. 122) gives life to this instrument by assignment.

Paragraph 123 gives the right to the assignee to bring an

action on it in his own name and to hold the assignor as a surety by diligence in its collection.

Paragraph 125 recognizes the liability of the assignor upon this instrument, as by the assignment this note becomes the debt of the assignor,—*Rollins* v. *Hope,* 18 Tex. 446,—and for that reason it is not within the statute of frauds nor the rule of *caveat emptor.*

Where the maker of a note is insolvent the assignor is liable to suit without even joining the maker. Rev. Stats. Ariz. 688.

The assignor thus becomes primarily liable as an assignor. *Flemming* v. *Powell,* 2 Tex. 231; *Moore* v. *Brown,* 15 Tex. 129; *Wood* v. *McMeans,* 23 Tex. 481; *Cook* v. *Southwick,* 9 Tex. 615; *Randon* v. *Barton,* 4 Tex. 289.

This counterclaim of the plaintiffs in error stands admitted on the record by the failure of the defendants in error to reply according to section 671, subdivisions 9, 10; nor was there any proof of any character offered against this part of the answer of plaintiffs in error. *Burtlett* v. *Stearns,* 33 Cal. 468; *Silvey* v. *Neary,* 59 Cal. 97.

A party cannot disprove an allegation which he has admitted by not denying it. *Bacon* v. *Cropsy,* 7 N. Y. 195. An admitted averment is therefore not in issue. *Bacon* v. *Cropsy, supra.*

It is therefore error to admit evidence upon matters not in issue. *Fortisque* v. *Crawford,* 105 N. C. 29, 10 S. E. 910; *Miller* v. *Miller,* 89 N. C. 209.

A general denial is not sufficient; the plaintiff must answer as the defendant would have to answer plaintiff. Where there is no answer to a counterclaim the counterclaim is admitted.

L. H. Chalmers, for Defendant in Error.

Section 5197 of the Revised Statutes of the United States allows national banks to charge the rate of interest allowed by the state to natural persons generally, and a higher rate if state banks are authorized to charge a higher rate. *Tiffany* v. *National Bank,* 18 Wall. 409.

Parties may agree upon any rate of interest in this territory. Rev. Stats. Ariz., sec. 2162. Under statutes permitting persons to contract for any rate, national banks have the same

privilege. *Hinds* v. *Marmolejo,* 60 Cal. 229; *Bank* v. *Bruhn,* 64 Tex. 571, 53 Am. Rep. 771; *Rockwell* v. *Farmers Bank,* 4 Colo. App. 562, 36 Pac. 905; *Wolverton* v. *Bank,* 11 Wash. 94, 39 Pac. 247; *Yakima Nat. Bank* v. *Knipe,* 6 Wash. 348, 33 Pac. 834; *Guild* v. *Bank,* 4 S. Dak. 566, 57 N. W. 499.

Where a state fixes a certain rate as the legal rate, but authorizes parties to agree in writing for a higher rate, the national banks are permitted to charge the higher rate. *Wiley* v. *Starbuck,* 44 Ind. 298; *Newall* v. *Bank,* 12 Bush. 57.

SLOAN, J.—On the twenty-eighth day of November, 1894, R. E. Daggs executed a mortgage on realty situate in Maricopa County, Arizona, and on four water-rights of the Consolidated Canal Company, represented by certificates, to the defendant in error, to secure three promissory notes, aggregating the sum of $9,741.72, and signed by A. J. Daggs, plaintiff in error, each dated November 1, 1894, and payable on or before one year from the date thereof, and each bearing interest from date at the rate of ten per cent per annum. On the same day A. J. Daggs, plaintiff in error, executed a mortgage to the defendant in error upon real estate in said county to secure the said promissory notes, and on the same date executed another mortgage upon other real estate in said county to secure the same indebtedness. Separate suits were brought by the defendant in error on the 21st of February, 1896, to foreclose the three mortgages, which suits were subsequently, by order of the court, consolidated and tried as one. The answer of A. J. Daggs was the same in each of the suits, and set up a number of defenses. The first set up that the notes sued upon were usurious, in that the rate of interest charged was in excess of that allowed to be charged by a national bank in this territory under the provisions of sections 5197 and 5198 of the Revised Statutes of the United States, and for that reason the defendant in error had forfeited its right to collect any interest upon said notes. By way of counterclaim the answer set up that the defendant in error was indebted to plaintiff in error A. J. Daggs upon a certain promissory note, which reads as follows: "$5,000.00. No. 1,340. Due Sept. 1. Phœnix, Arizona, July 1, 1893. On the 1st day of September, 1893, without grace, we, or either of us, for value received, promise to pay to Thomas Arm-

strong, Jr., at the Phœnix National Bank, at their office in Phœnix, Arizona, five thousand dollars ($5,000) in United States gold coin, with interest at the rate of 1¼ per cent per month from —— until paid. In case of legal proceedings hereon, we or either of us agree to pay ten per cent of amount found due hereon as attorney's fees. Secured by chattel mortgage of even date herewith. W. A. and P. P. Daggs. W. A. Daggs. P. P. Daggs." And indorsed on the back as follows: "Thomas Armstrong, Jr. Sept. 30, 1893, interest from July 1st to Octo. 1st, 1893, $187.50; Dec. 30, 1893, interest from Oct. 1st, 1893, to Jan. 1st, 1894, $187.50; April, 1894, interest from Jan'y 1st to Apr. 1st, $187.50." That the payee of said note, Thomas Armstrong, Jr., assigned the same in blank to the defendant in error; and on the twenty-eighth day of November, A. D. 1894, for a valuable consideration, in writing, the latter assigned the same to the plaintiff in error, A. J. Daggs; and that at the date of said assignment the makers of said note were, and ever since had been, and were then, notoriously insolvent; of all of which the defendant in error is charged to have had knowledge; and further, that no part of said note had been paid, and that there was then due thereon the sum of $7,076.91; and judgment thereon was prayed for for said amount, together with the interest thereon, according to the tenor and effect of said note. For a further defense, and by way of counterclaim, the answer set up that at the time of the execution of the three promissory notes sued upon the defendant in error and plaintiff in error A. J. Daggs entered into a contract in writing, wherein the former, as a part of the consideration of the said notes, expressly stipulated that the said notes should be received in payment for all its right, title, and interest in and to a certain chose in action wherein Hugh McCrum was plaintiff and W. A. and P. P. Daggs were defendants, and defendant in error was the intervener, which chose in action was based upon the note for five thousand dollars signed by said W. A. and P. P. Daggs, and which was set up and contained in the aforesaid counterclaim, and which was secured by a chattel mortgage executed by the payee named in said note; that the makers of said note were at the time, had been, and were then, actually and notoriously insolvent, all of which the defendant in error well knew; and that it was further

agreed between the defendant in error and the plaintiff in error A. J. Daggs that the litigation and suit upon said note and mortgage should be carried on in the name of defendant in error until the said cause should be determined and settled, and that defendant in error should pay all costs of said litigation accruing prior to November 1, 1894; that A. J. Daggs, plaintiff in error, should bear all the costs accruing thereafter; that the said plaintiff in error had paid out and expended large sums of money in the prosecution of said suit—to wit, $45.65—as costs in and about said suit, which had accrued prior to said November 1, 1894. Said plaintiff in error further alleged that the defendant in error had wholly failed and refused to allow its name to be used in the continuation of said suit, and had wholly failed and refused to sign an appeal-bond to the supreme court of the United States as principal, in violation of its said agreement, to defendant's damage in the sum of $10,122.55. As a further defense, the answer set up that as security to the said promissory note sued upon plaintiff in error A. J. Daggs had pledged certain shares of water stock of the reasonable value of four thousand dollars; that the defendant in error had failed and refused to account to said plaintiff in error for said certificates of water stock or their value, and had converted the same to its own use, to his damage in the sum of four thousand dollars. The answer filed by R. E. Daggs in the suit to foreclose the mortgage executed by him was substantially and in effect the same as that filed by his co-defendant, A. J. Daggs. Both the answers—that filed by A. J. Daggs and that filed by R. E. Daggs—were verified. To these answers and counterclaims therein set up defendant in error, by way of reply, filed a general denial, which was not verified. Judgment was had for the defendant in error against plaintiff in error A. J. Daggs for the amount due upon said promissory notes, and a decree entered foreclosing the mortgage given to secure the same.

At the outset we are compelled to call attention to the omission of counsel to comply with the statute and the rules of this court on the subject of assignments of error. These are imperative, and must be observed. It is not our business to search the record if perchance we may find reversible error. It is our duty to examine into such alleged errors, and only

such, as are distinctly pointed out in the record. The assignments made by plaintiffs in error in their brief are for the most part so general in character and so wanting in definiteness that they cannot be considered. Although defective as assignments, we have by liberal construction found that two of them present questions for our review. The first of these reads as follows: "The court erred in not giving judgment for plaintiffs in error on their pleas in bar of the recovery of any interest, for the reason that the contract with the national bank for ten per cent interest is *ultra vires.*" What is possibly meant by this assignment is, that the court erred in allowing under the pleadings defendant in error to recover interest upon the notes sued upon, for the reason that a national bank of this territory is prohibited from charging a rate of interest in excess of seven per cent per annum, under the limitations imposed by sections 5197 and 5198 of the Revised Statutes of the United States. The pleadings present this question, and we will therefore consider it as properly assigned.

The sections of the Revised Statutes of the United States above referred to read as follows:—

"Sec. 5197. Any association may take, receive, reserve, and charge on any loan or discount made, or upon any note, bill of exchange, or other evidence of debt, interest at the rate allowed by the laws of the state, territory, or district where the bank is located, and no more, except that where by the laws of any state a different rate is limited for banks of issue organized under state laws, the rate so limited shall be allowed for associations organized or existing in any such state under this title. When no rate is fixed by the laws of the state or territory or district, the bank may take, receive, reserve, or charge a rate not exceeding seven per centum, and such interest may be taken in advance, reckoning the days for which the note, bill, or other evidence of debt has to run. And the purchase, discount, or sale of a *bona fide* bill of exchange, payable at another place than the place of such purchase, discount, or sale, at not more than the current rate of exchange for sight drafts, in addition to the interest, shall not be considered as taking or receiving a greater rate of interest.

"Sec. 5198. The taking, receiving, reserving, or charging a rate of interest greater than is allowed by the preceding sec-

tion, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon. In case the greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover back, in an action in the nature of an action of debt, twice the amount of the interest thus paid from the association taking or receiving the same; provided such action is commenced within two years from the time the usurious transaction occurred. That suits, actions, and proceedings against any association under this title may be had in any circuit, district, or territorial court of the United States, held within the district in which such association may be established, or in any state, county, or municipal court in the county or city in which said association is located, having jurisdiction in similar cases.''

By the terms expressed in section 5197 it will be seen that the rate of interest which a national bank may charge is regulated by the provisions of the statutes of the state or territory where the bank is located, upon the general subject of interest. Plaintiffs in error contend that no rate of interest is fixed by the laws of this territory, and that therefore the provision of section 5197 which reads, ''When no rate is fixed by the laws of the state or territory or district, the bank may take, receive, reserve, or charge a rate not exceeding seven per centum,'' limits and restricts the right of a national bank in Arizona to the rate therein provided. The law upon the general subject of interest in this territory is found in paragraphs 2161 and 2162 of the Revised Statutes of 1887, which read as follows:—

''2161 (section 1). When there is no express agreement fixing a different rate of interest, interest shall be allowed at the rate of seven per cent per annum on all moneys after they become due on any bond, bill, promissory note or other instrument in writing, or any judgment recovered in any court in this territory, for money lent, for money due on any settlement of accounts from the day on which the balance is ascertained and for money received for the use of another.

''2162 (sec. 2). Parties may agree in writing for the payment of any rate of interest whatever on money due or to become due on any contract; any judgment rendered on such

Arizona 5—27

contract shall conform thereto, and·shall bear the rate of interest agreed upon by the parties, and which shall be specified in the judgment."

The territorial law in effect fixes the rate of interest, in the absence of any express agreement upon the subject, but permits the parties to any contract to agree in writing upon any rate whatever. The question presented therefore is, Are national banks located in states or territories having a statute upon the subject of interest which fixes a rate in the absence of an express agreement, but which likewise permits parties to stipulate in writing for any rate of interest, authorized to contract like other citizens living in such states or territories? So far as we have been able to find, there are no federal cases which conclusively adjudicate this question. In the case of *Bank* v. *Johnson,* 104 U. S. 271, it was decided that in the state of New York, where the state law fixed the maximum rate of interest at seven per cent, and which made any contract usurious which exceeded that rate, a national bank could not discount paper at a greater rate than seven per cent, and thus in effect reserve a greater rate of interest than that allowed by the local law. In the case of *Tiffany* v. *Bank,* 18 Wall. 409, the supreme court held that in the state of Missouri, where by the local law banks of issue organized under the state laws were limited to eight per cent, but the rate of interest allowed generally was ten per cent, a national bank could charge and recover interest at the higher rate allowed to natural persons. The case of *Danforth* v. *Bank,* 1 C. C. A. 62, 48 Fed. 271, was decided upon the statute of New Jersey fixing the legal rate of interest in that state at six per cent per annum. It was there held, following *Bank* v. *Johnson, supra,* that the purchase by a national bank of accepted drafts at a greater discount than lawful interest on their face value came within the prohibition of section 5197, and was the taking of an unlawful rate of interest under the state law. Since there are no conclusive adjudications upon the precise question under consideration in the federal courts, we must look to the decisions of the various states and territories having statutes on the subject of interest similar in their provisions to that of Arizona.

The statutes of the state of California provide that, "Unless there is an express contract in writing, fixing a different rate,

interest is payable on all moneys at the rate of seven per cent per annum." Civ. Code, sec. 1917. Construing section 5197 of the Revised Statutes of the United States in the light of the local law, the supreme court of that state in the case of *Hinds* v. *Marmolejo,* 60 Cal. 229, speaking by Ross, J., held that national banks, like natural persons, might charge and collect such rates of interest as might be agreed upon. The learned judge writing the opinion uses this language: "By the first clause of this section, national banks are authorized to charge and receive interest at the rate allowed by the laws of the state or territory where the bank is located, and by the last clause, when no rate is fixed by the laws of the state or territory, they are allowed a rate not exceeding seven per centum. Reading the entire section, and considering the two clauses together, as they must be considered, we are of the opinion that the word 'fixed' used in the last clause is used in the same sense as the word 'allowed' in the first clause, and that by the words 'the laws of the state or territory' is meant statute laws. In other words, that the true interpretation of the act of Congress is that, in those states and territories having no statute upon the subject of interest, the national banks are allowed a rate not exceeding seven per centum, while, in those states and territories having a statute on the subject they are authorized to charge and receive interest at the rate allowed other banks and individuals."

In the case of *Rockwell* v. *Bank,* 4 Colo. App. 562, 36 Pac. 905, the Colorado court of appeals held that the law of the state fixing a legal rate of interest, but permitting the parties to agree for any rate of interest, a national bank in that state may charge interest at any agreed rate. To the same effect is the case of *Bank* v. *Bruhn,* 64 Tex. 571, 53 Am. Rep. 771.

In the case of *Guild* v. *Bank,* 4 S. Dak. 566, 57 N. W. 499, the supreme court of South Dakota construed the term "fixed" as used in the clause of section 5197 which reads, "Where no rate is fixed by the laws of the state, territory, or district," etc.,— as substantially a repetition of the word "allowed," used in the first clause of the section, and held that a national bank might therefore charge any rate of interest allowed by the local statute to be the subject of contract by natural persons. The Dakota court approves the view taken upon this subject by the supreme court of California in *Hinds* v. *Marmolejo,*

*supra.* In accord with the courts of the states of California, Colorado, Texas, and North Dakota, we have reached the conclusion that a national bank in Arizona is privileged to charge and collect any rate of interest which may be agreed upon, and is as free to act in this regard as are banks organized under local laws or as individuals living in the territory.

The second assignment of error, as made by plaintiffs in error, reads: "The court erred in overruling the plaintiffs' in error motion for judgment on the pleadings, for the reason that there was no reply to plaintiffs' in error verified counterclaims." The latter part of this assignment would appear to indicate that what is intended is, that the court erred in not rendering judgment for the plaintiffs in error for the amounts of the counterclaims pleaded, because they were not denied under oath by the defendant in error in its reply to the amended answers filed by plaintiffs in error. The general denial made by the defendant in error by way of reply to the counterclaims set up in the answers of the plaintiffs in error was sufficient, although not verified, to put the plaintiffs in error upon proof, except as to any matter pleaded therein which by paragraph 735 of the Revised Statutes is required to be denied under oath. An examination of the matters pleaded by way of counterclaim in the answers of plaintiffs in error discloses that none of those are matters which are required to be verified by said paragraph, except the allegation contained in the first counterclaim attempted to be set up, founded upon the assignment of the note by P. P. and W. A. Daggs to A. J. Daggs. It is alleged that the note was assigned by the bank to Daggs by an instrument in writing. As to this allegation, possibly, under subdivision 5 of said paragraph 735, under the general denial, unverified by the oath of the defendant in error, the assignment should properly be taken as admitted. To warrant a recovery, however, something more than the proof of the assignment of the note to Daggs was needed. While our statutes recognize the right of an assignee to hold the indorser of a non-negotiable chose in action as surety for the payment of the same, no recovery is authorized without it be shown that the assignee had used due diligence to collect the same. Rev. Stats., pars. 123, 124.

Again, an examination of this pleading shows that it fails to state a cause of action. A counterclaim must, to be good,

contain every allegation which would be needed in a complaint founded on the same cause of action. The only allegations which are made in this counterclaim are, that the bank assigned a non-negotiable promissory note, past due, to A. J. Daggs, and that at the time of the assignment the makers were insolvent, and were still insolvent, and that the same had not been paid. No allegation is made that due diligence was used, as required by the statute, or that any effort was made to collect the same. This omission in the pleadings is doubly fatal for the reason that the note appears from an indorsement upon its face to have been secured by chattel mortgage of even date therewith. With this indorsement thereon, the mere allegation of the insolvency of the makers of the note was not sufficient to charge the indorser as a surety without an allegation of the exercise of due diligence to collect the same and to enforce the security, and a failure after such effort to collect the same. The motion for judgment upon this counterclaim was not only properly denied by the court below, but, had no reply been filed by the defendant in error, the facts pleaded were not sufficient to support a judgment thereon. The judgment of the lower court is affirmed.

Street, C. J., Doan, J., and Davis, J., concur.