[Civil No. 4210. Filed October 22, 1940.]

[106 Pac. (2d) 504.]

VALLEY GIN COMPANY, a Corporation, Appellant, v. NEIL S. McCARTHY and MARGUERITE McCARTHY, His Wife, Appellees.

Messrs. Phillips, Holzworth & Phillips and Mr. David P. Jones, for Appellant.

Messrs. Baker & Whitney and Mr. Lawrence L. Howe, for Appellees.

LOCKWOOD, J.—This is an appeal by Valley Gin Company, a corporation, hereinafter called defendant, from a judgment in favor of Neil S. McCarthy and Marguerite McCarthy, his wife, hereinafter called plaintiffs. For the purposes of the appeal the facts shown by the record may be assumed to be as follows:

Plaintiffs were the owners of certain land set forth in the complaint, and on February 11, 1937, they leased it to one B. F. Wells, hereinafter called the lessee, for a period of one year from March 1, 1937. The lease provided it was based on an acreage of 225 acres, and it was contemplated by the parties, among other things,

that there would be a mortgage of the crops grown. The lease, therefore, contained the following provisions:

" . . . and the lessee covenants and agrees not to permit any lien, charge or encumbrance, of any nature or kind, to accrue against said leased premises . . . except the hereinafter mentioned crop and chattel mortgage liens.

" . . . it is anticipated that there will be financing of this acreage and the owner agrees to sign a waiver against any loan on the crops being grown, for a loan of not to exceed $20.00 per acre each year."

The land in question was to be irrigated from pumps, and it was provided by the lease:

" . . . However, it is understood between the parties hereto and the lessors hereby covenant and agree that they will, within forty (40) days from the time of the signing of this lease, repair said pumps so that they will produce at least 2250 gallons per minute, and shall also, within said time, install a new motor starter on the well where the worn-out starter is now located."

Lessee went into possession of the premises and found it necessary to finance himself by mortgaging the crop, as provided in the lease. The matter was taken up with plaintiffs, and on February 16 the following letter was sent to the lessee:

"Dear Mr. Wells:

"The lease agreement between us . . . contains a provision . . . that there will be financing of this acreage and that I shall sign a waiver against any loan on the crops being grown for a loan not to exceed $20.00 per acre each year.

"This is to confirm our understanding and shall be considered as one of the terms of the lease, that the $20.00 per acre referred to shall be in addition to any amounts paid to me by others and yourself as rental for the leased premises and that the waiver against any crop loans for a loan of not to exceed $20.00 per

acre shall be in addition to any amounts advanced for the payment of rent.

"Very truly yours,
"(Signed) NEIL S. McCARTHY.

Thereupon lessee applied to defendant for a loan to be secured by a mortgage on the crop, and defendant wrote plaintiffs, stating:

"In order for us to make this loan to B. F. Wells it will be necessary for us to have a waiver from you of your interest in crops until our loan is repaid with interest. For this reason we are sending you this letter with the request that you sign the waiver below and return to us as quickly as possible."

Plaintiffs thereupon executed and returned the following waiver:

"Valley Gin Company, Inc.
"Peoria, Arizona.
"Gentlemen:
"In consideration of your making loan to B. F. Wells for the purpose of growing a crop of cotton on lands as described above; the undersigned owner, mortgagee of crops or chattels, or mortgagee of the premises described or beneficiary under Trust Deed of the premises described above does hereby authorize B. F. Wells to execute a crop mortgage to Valley Gin Company, Inc., covering crop of cotton to be grown during season of 1937 and further agree that all right, title, claim, interest or lien of the undersigned in, on or to the chattels, property, and crops mortgaged shall at all times be and remain subject and inferior to the lien claim, right and title of said Valley Gin Company, Inc., or their assigns.
"This waiver is limited to a sum not to exceed $20.00 per acre less payments for land rental and excluding harvesting costs and interest."

The waiver was a printed form used by defendants, with the exception of the last sentence, which was written in by plaintiffs before they executed it.

185

Lessee thereupon planted a crop of cotton on the land, and on August 18 plaintiffs agreed to make a further waiver of their landlord's lien in the following language:

"I am willing that you shall be entitled to priority of the crop for $22.00 an acre instead of $20.00 an acre, upon condition however that the entire $22.00 shall have been spent in the farming of the crop and not otherwise and for no other purpose and particularly that the additional $2.00 an acre, to which I am now consenting, shall be used solely to defray the cost of eliminating the Johnson grass and that the Johnson grass shall be eliminated."

After the crop was made it was harvested and delivered to defendant for ginning and sale. The gross proceeds of the crop which passed into the hands of defendant amounted to $7,730.11, which was by it credited to the account of lessee. Defendant had advanced a total sum to lessee considerably in excess of the amount received from the proceeds of the crop, and applied all of such proceeds to the repayment of its advances. Among these advances was $1,350 for the first installment of rent. Some $1,350 of rent remained unpaid after the crop was harvested, and plaintiffs sued defendant for that amount, alleging that it had converted the proceeds of the crop in a sum in excess of the rent still due.

Defendant answered, claiming that by virtue of the waiver above set forth it was entitled to the proceeds of the crop, not only in the sum of $20 per acre, afterwards increased by the letter of August 18 to $22 per acre, and the rent advanced, but also to cover the amount advanced for the harvesting costs and interest thereon, and that such harvesting costs and interest added to the rent and the $22 per acre advances would more than exhaust the money it had received from the crop. It also filed a counterclaim, setting forth the

agreement in regard to the repair of the pumps on the land, above quoted, and alleged that plaintiffs never did repair the pumps as required, and because of such failure the normal crop on the land was decreased about one-half and was inferior and damaged in a sum amounting to $2,571.81, and judgment was prayed on the counterclaim for such amount. A demurrer was interposed to the counterclaim, which was sustained, and no amended counterclaim was ever filed.

The matter came on for hearing on the complaint and answer before the court sitting without a jury, and evidence was presented showing the facts above set forth, whereupon judgment was rendered in favor of plaintiffs, and against defendant, for the sum of $1,350, plus interest and costs, being the amount still due on the rent. No reference whatever was made in the judgment to the counterclaim or the issues raised thereby, nor was any objection to the form of the judgment made by defendant. A motion for new trial was made, which contained no reference to the counterclaim, and it was denied. Thereafter notice of appeal was given, which reads as follows:

"Notice is hereby given that the defendant, Valley Gin Company, a corporation, appeals to the Supreme Court of the State of Arizona from that certain judgment rendered and entered in the Superior Court of Maricopa County, Arizona, in the above entitled and numbered cause on the 23rd day of May, 1939, said judgment being in favor of the plaintiffs, Neil S. McCarthy and Marguerite McCarthy, his wife, and against the defendant, Valley Gin Company, a corporation, and from the whole thereof, and from that certain Order made and entered in the above entitled and numbered cause in the said Superior Court of Maricopa County, Arizona, on the 5th day of June, 1939, in and by which the said Superior Court did overrule and deny the within defendant's motion for a new trial, made and entered by said defendant in the above entitled and numbered cause."

There are two questions presented for our consideration. The first is as to the action of the court in sustaining the demurrer to the counterclaim, and the second is as to the interpretation of the language of the waiver signed by plaintiffs. We consider these in their order.

 It is urged by plaintiffs that we may not consider the question of whether the demurrer to the counterclaim was properly sustained, for the reason that no final judgment was ever rendered on it, and that an appeal may not be taken from an order sustaining or overruling a demurrer. Defendant admits the latter proposition, but claims that an appeal from the judgment rendered automatically brings up the ruling of the court upon the demurrer to the counterclaim. Section 3660, Revised Code of 1928, reads, so far as material to the point, as follows:

*"Orders, rulings and evidence reviewable.* Upon an appeal from a final judgment the supreme court shall review any intermediate order involving the merits and necessarily affecting the judgment, and all orders and rulings assigned as error, whether a motion for a new trial was made or not. . . . "

It is urged that this language is broad enough to include the order sustaining the demurrer to the counterclaim. We think the language "all orders and rulings assigned as error" applies only to those made in respect to an issue which had been litigated and finally determined by a judgment, so that it was *res adjudicata.* A counterclaim is a purely statutory remedy and was not known to the common law. The term is a general and comprehensive one and may be defined as a cause of action in favor of defendant upon which he might have sued the plaintiff and recovered judgment in a separate action. It is not, strictly speaking, a defense to an action but is an independent claim which, in order to avoid a multiplicity of suits, is permitted by

188

statute to be litigated in the original action. This court, in the very early case of *Daggs* v. *Phoenix National Bank,* 5 Ariz. 409, 53 Pac. 201, 205, held:

" . . . A counterclaim must, to be good, contain every allegation which would be needed in a complaint founded on the same cause of action. . . . "

It would seem to follow from this that when judgment is finally rendered in an action which includes a counterclaim, there should be a formal adjudication upon the counterclaim in order to determine its validity, so that the decision may become *res adjudicata* as to it, and that a judgment on the original cause of action alone does not determine the counterclaim. While the decisions on this point are not numerous, they seem to be unanimous to the effect that when a counterclaim is set up in an action and there is no final judgment rendered thereon, a judgment on the original cause of action does not bar the bringing of a separate and independent suit upon the counterclaim. *Hobbs* v. *Duff,* 23 Cal. 596; *Spence* v. *Hull,* 75 Or. 267, 146 Pac. 95; 34 C. J. 866, and cases cited.

The judgment in the present case makes no reference whatever to the counterclaim, and would not be a bar to a separate and independent action thereon. This being true, the provisions of section 3660, *supra,* do not authorize a review of the action of the court in overruling the demurrer, for if defendant had any rights against plaintiffs, by virtue of the counterclaim, it may still litigate such rights in an independent action.

The next question is as to the construction of the language of the waiver. There can be no doubt that, in the absence of the provision written in by plaintiffs, the printed form is a general waiver as against any and all claims of defendant. It is evident that the matter inserted by plaintiffs was a limitation and not an enlargement of the general waiver, and it

must reasonably be construed as such. In view of this fact and of the language of the other correspondence between plaintiffs and lessee, we think the trial court properly held that plaintiffs had waived their landlord's lien only to the extent of $22 per acre, plus rent advances. Such being the case, it correctly determined that defendant was entitled to retain from the proceeds of the crop only the sum of $4,950, plus the $1,350 which it had already advanced as the first payment on the rent. This would leave subject to the lien of plaintiffs $1,430.11, which was more than sufficient to sustain the judgment in their favor for $1,350 rent, with interest.

The judgment of the trial court is affirmed.

ROSS, C. J., and McALISTER, J., concur.