368 P.2d 585

**STATE of Utah, by and through its ROAD COMMISSION, Plaintiff and Appellant,**

v.

**Joseph A. PARKER et al., Jerry Sine and Dora Ann P. Sine, his wife, Defendants and Respondents.**

No. 9489.

Supreme Court of Utah.

Jan. 31, 1962.

Walter L. Budge, Atty. Gen., Robert S. Campbell, Jr., Asst. Atty. Gen., for appellant.

Richards, Bird & Hart, Salt Lake City, for respondent.

HENRIOD, Justice.

Interlocutory appeal by the State from a denial of its motion to dismiss defendant Sine's counterclaim in a condemnation suit by the State to acquire property for an interstate highway construction project. Reversed, with no costs awarded.

The subjoined sketch represents the overall property of Sine on the one hand and that described in the condemnation complaint.[1] It shows that Sine owned two tracts, "A" and "B," separated by a highway used to reach local streets and then on to California. The small shaded area included in "B" was the only property sought by the State and the only property described in the complaint.

1. Title 78–34–7, Utah Code Annotated 1953: "All persons in occupation of, or having or claiming an interest in, any of the property *described in the complaint,*

It is conceded: That "A" is a motel property, having no economic or functional connection with "B," which latter was used strictly as a private residential property; that "A" was not the subject of condemnation. However, Sine urged that "A" was damaged by construction of the interstate highway, and that such damage was compensable in this eminent domain proceeding. He says the damage was an interference with light and air, subsurface pressure, sewer facilities and access, with a consequent loss in profits incident to the motel's operation.

■ After the State filed its action, Sine sued the contractor doing the work in constructing the North-South highway, elevated on stilts to cross over the then existing East-West highway leading to California, to enjoin further construction already begun, and for damages arising out of the alleged interferences mentioned supra. A motion to dismiss *that* action was granted by the trial court on the asserted basis that Sine could litigate the issues in the State's condemnation proceeding. The State, no party to that action, is not bound by that ruling, nor are we.[2]

In a counterclaim filed in *this* case *after* the dismissal in the *other* case, Sine says that, 1) since he is a party to this action, he is entitled to damages as to "A," although it was not described in the State's complaint, nor was it the subject of condemnation; 2) that the counterclaim was proper under our rules of procedure, and 3) that the damages alleged are compensable in the instant action.

Contention 2) relates to procedure and joinder of parties. It does not go to the question of whether Sine has a compensable claim against the State, and therefore, for the purposes of this case, need not be canvassed, but may be conceded as having merit.

Contentions 1) and 3) may be viewed in the aggregate, since both pose the same fundamental question whether the State is suable for consequential damage to property not sought for condemnation.

■ On numerous occasions we have held that such damage is not recoverable because of the State's immunity. Fairclough v. Salt Lake County,[3] a case most similar to this one, is our last pronounce-

or in the damages for the taking thereof, though not named, may appear, plead and defend, each in respect to his own property or interest, or that claimed by him, in the same manner as if named in the complaint."

2. Taylor v. Barker, 70 Utah 534, 262 P. 266, 55 A.L.R. 1032 (1927), wherein the court said that "The law is well settled that as a general rule a judgment is effective only between the parties to the action and their privies, and that no rights whatever, either in favor [of] or against strangers to the judgment, are acquired, lost, or affected by reason of the judgment."

3. 10 Utah 2d 417, 354 P.2d 105 (1960).

ment in this respect. Therein are cited our previous decisions which we are disinclined to reverse. Contrariwise, we consider and hold that the Fairclough case and those cited therein are dispositive here, to which authorities we refer the reader without needless repetition.

■ As to Sine's argument that he, being a defendant, may counterclaim and recover, is answerable by the simple and authoritative conclusions that neither under our rules or elsewhere, can a counterclaimant cast himself in any other role than that of a plaintiff.[4] If Sine, as plaintiff, had sued the State in this case, he would have been unable to proceed under the authorities referred to above. Since a counterclaim must be invested with all the requisites of a complaint, it would strain reason to conclude that it would have any attribute that would alter nonresult into result.

If the State were not suable in this case in the first instance, it is not suable by counter-complaint, and we so hold.

McDONOUGH, CALLISTER and CROCKETT, JJ., concur.

4. Valley Gin Co. v. McCarthy, 56 Ariz. 181, 106 P.2d 504 (1940): "The term (counterclaim) is a general and comprehensive one and may be defined as a cause of action in favor of defendant upon which he might have sued the plaintiff and recovered judgment in a separate action." Wilson v. Tromly, 404 Ill. 307, 89 N.E.2d 22 (1949); 47 Am. Jur. 736, Sec. 37.

WADE, Chief Justice (dissenting).

I dissent, adhering to my views expressed in Springville Banking Company v. Burton,[1] and Fairclough v. Salt Lake County.[2] By these decisions, this court has nullified a clear and unambiguous constitutional provision that "[P]rivate property shall not be taken or damaged for public use without just compensation."[3] I refuse to worship at the shrine of sovereign immunity where to do so, as in this case, requires a clear violation of our constitution. These decisions are also clearly contrary to the modern trend on sovereign immunity.[4]

HENRIOD, Justice (separately commenting on the dissent of Mr. Chief Justice WADE, supra).

I feel constrained to answer the dissent, without expecting my learned colleagues, who have concurred in the main opinion, to pass on the merits or demerits of the personal differences of opinion which Mr. Chief Justice WADE and I have harbored and do harbor here with respect to sovereign immunity and the authorities which

1. Springville Banking Co. v. Burton, 10 Utah 2d 100, 349 P.2d 157.
2. Fairclough v. Salt Lake County, 10 Utah 2d 417, 354 P.2d 105.
3. Section 22, Article I, Constitution of Utah.
4. See Justice Wolfe's dissenting opinion in Bingham v. Board of Education, 118 Utah 582, 223 P.2d 432, where he advocated the complete overruling of sov-

the former cites in support of his conclusion.

I note with interest that the Chief Justice refers to a dissenting opinion of Justice Wolfe in Bingham v. Board of Education, "where he advocated the complete overruling of sovereign immunity." Advocacy for a personally desired result is a poor substitute for stare decisis, or for the emasculation of legislation which has been interpreted time and again by this court, and which I personally think construable differently than does the Chief Justice. I submit that the authorities overwhelm his conclusion.

It is conceded that Muskopf v. Corning Hospital, cited in the dissent, is the closest case supporting Mr. Chief Justice WADE'S thesis, but the cases he urged in Springville Banking Co. v. Burton, Fairclough v. Salt Lake County and the others, it is submitted, did not and do not support his contention. In the Muskopf case, the main opinion, it is true, survived a strong and very convincing dissent. That case heavily suggests judicial

legislation, and shares Mr. Chief Justice WADE'S refusal to worship at the shrine of sovereign immunity, and equally and just as religiously refuses to do else but justify objectivity, with an irreverence for precedent. Although not binding on the California Supreme Court, nor this court, it is noteworthy that subsequent cases in the intermediate California appellate courts, seem to have interpreted the decision as not applicable to situations where the legislature has created the immunity or spoken with reference thereto.[1] The Muskopf case finds little comfort in the other cases cited by Mr. Chief Justice WADE.

Hargrove v. Cocoa Beach [2] has to do only with municipal liability on the city level, but nowhere else. Subsequent Florida cases clearly demonstrate its limitations. The Florida Supreme Court in City of Miami v. Keton,[3] held that immunity could be imposed as a bar to a suit to remit erroneously collected fines. In Smith v. Duval County Welfare Board,[4] the court concluded that the Hargrove case did not purport to waive

ereign immunity. Also the following cases from other states to the same effect: Muskopf v. Corning Hospital District, (Cal.) 359 P.2d 457; Hargrove v. Cocoa Beach, (Fla.) 96 So.2d 130, 60 A.L.R.2d 1193, Anno. Municipal immunity from liability from Torts, pp. 1198–1205; Molitor v. Kaneland Community Unit District No. 302, 18 Ill.2d 11, 163 N.E.2d 89; for comment on this case and legislative history thereafter see "Municipal Tort Liability in Il-

linois" page 475, by Robert Z. Hickman, University of Illinois Law Forum, Vol. 1961, Fall No. 3; Williams v. City of Detroit (Mich.) 111 N.W.2d 1.

1. Ngim v. City and County of San Francisco, Cal.App., 13 Cal.Rptr. 849 (1961); Akers v. City of Palo Alto, Cal.App., 14 Cal.Rptr. 767 (1961).
2. Fla., 96 So.2d 130, 60 A.L.R.2d 1193 (1952).
3. Fla., 115 So.2d 547 (1959).
4. 118 So.2d 98 (D.C.App.Fla.1960).

state immunity, relying on Keggin v. Hillsborough County [5]. It appears clear that the Hargrove case does not pretend to eliminate sovereign immunity on the state or other levels, but only as to a city, where, in effect, the distinction between governmental and proprietary functions was eliminated.

Illinois abolished municipal immunity in Molitor v. Kaneland Community Unit Dist. No. 302,[6] and by dicta gave the appearance of extending the abolition to other levels; however, the state of Illinois enjoys constitutional immunity.[7] This decision is therefore not directly applicable to suits against the state. Even so, the subsequent history demonstrates the weakness of this case as precedent. Within 40 days of the next legislative session, the Illinois Legislature passed five bills that in effect recognized the doctrine of sovereign immunity as to local agencies. Hickman, Municipal Tort Liability in Illinois.[8] Subsequent cases from that state, both federal and state, have recognized that the Illinois Legislature had much at stake in the sovereign immunity principle. Miller v. City of Chicago.[9]

The most recently expressed effort to eliminate sovereign immunity was reflected in Williams v. City of Detroit.[10] The case itself netted plaintiff nothing, since the court divided on the question of abolishing sovereign immunity. A majority indicated, however, that from that time on the doctrine would not apply. The opinion of Justice Carr is persuasive in reflecting the objection to such action, when he said that "The radical departure *from existing law* in this State contemplated by Justice Edwards, and those of like mind with him, obviously involves the exercise of legislative authority. The fact that the change to be made is prospective only is significant in this respect." A most appalling factor of the Michigan decision is the majority opinion's noting of the fact that the legislature had failed to respond to pleas for abolition of the doctrine and hence the courts, in the name of "Justice," are justified in engaging in legislation in spite of constitutional mandates to the contrary. The decision is too recent to canvass the response of the Michigan Legislature to the court's new estate, but it is sufficient to note that the court recognizes the minority position in the case, when Mr. Justice Carr says that "Attention is called to court decisions in Florida, Illinois and California, in each instance by a divided court, rejecting the doctrine of governmental immunity. We cannot agree that such decisions, *in view of the overwhelming weight of authority to the contrary,* indicate any

5. 71 Fla. 356, 71 So. 372 (1916).
6. 18 Ill.2d 11, 163 N.E.2d 89 (1959).
7. Ill.Const. Art. 4, Sec. 26.

8. Illinois Law Forum, 1961, p. 475; 54 North Western U.L.Rev. 588 (1959).
9. 25 Ill.App.2d 56, 165 N.E. 724 (1960).
10. 364 Mich. 231, 111 N.W.2d 1 (1961).

'major trend' toward the general abolition of the doctrine."

The writer is convinced that any drainage of taxpayers' funds by abolition of the doctrine, is the subject of legislative attention in our tri-partite system of government,— not the courts. The legislature better may inventory the practical effects of creating a Pandora's Box. The courts better may interpret, from a strictly judicial, not economic standpoint, the meaning and extent of legislation. As we have stated in other cases, damaged citizens are not wholly without redress in isolated cases, since under our same system of government, the legislature itself might grant relief to an applicant if his claim properly is processed through the Board of Examiners.[11] It takes little imagination to visualize a situation where, particularly in the remoter areas of a sparsely settled state like this, a school district, or a small town might suffer sudden death were it not protected by a shield of immunity.

Neither the Florida nor Illinois decisions would be operative in the instant case, and it may be equally true of the California ruling. The Michigan decision, with its questionable reasoning, and its bitterly divided court, offers little argument to dispose of precedents of this jurisdiction, and to fly in the teeth of the majority rule.

The cases cited in the dissent's footnote do not show any modern trend away from a sovereign immunity, as suggested by Mr. Chief Justice WADE. In our surrounding sister states, the cases quite definitely challenge and refute any such suggestion. Berger v. Dept. of Highways, 143 Colo. 246, 353 P.2d 612 (1960); Vendrell v. School Dist. No. 26C Malheur County, 360 P.2d 282 (Or.) (1961); Maffei v. Incorp. Town of Kemmerer, 80 Wyo. 33, 338 P.2d 808, 340 P.2d 759 (1959); Kilbourn v. City of Seattle, 43 Wash.2d 373, 261 P.2d 407 (1953); Livingston v. Regents of N. M. College of Agriculture, 64 N.M. 306, 328 P.2d 78 (1958). (Emphasis added.)

11. Utah Constitution, Art. VII, Sec. 13; Title 63–6–1, Utah Code Annotated 1953.