419 P.2d 350

**Shirley H. BIRT, Appellant,**

v.

**Dancey BIRT, Appellee.**

**No. 2 CA–CIV 197.**

Court of Appeals of Arizona.

Oct. 27, 1966.

Rehearing Denied Nov. 29, 1966.

Lesher, Scruggs, Rucker, Kimble & Lindamood, by Robert O. Lesher, Tucson, for appellant.

Carlos G. Robles, Tucson, for appellee.

MOLLOY, Judge.

This is an appeal from a judgment awarding to the plaintiff one-quarter of the proceeds of the sale of stock in a closely-held corporation. The action is one brought by a son, Dancey Birt, against his mother, Shirley H. Birt, and pertains to occurrences going back to the year 1949.

In 1949, Halden Birt, hereinafter referred to as the father, and his wife Shirley H. Birt, hereinafter referred to as the mother, incorporated Marana Plantations, Inc., for the purpose of farming land. At the time of incorporation, the stock was issued in substantially equal shares to the father and mother. The parents operated the corporation for several years, during which time Dancey Birt, hereinafter referred to as the son, was given one share of stock in the corporation. The father and mother were divorced in 1954, and under the decree they each retained approximately half of the original stock. After the divorce, the father expressed a desire to either buy out his former wife's interest or sell his interest to her. On March 17, 1955, a written contract was made between the father, as seller, and both mother and son, as buyers, for the purchase of the father's interest in the corporation.

The agreement provided for a purchase price of $190,000, which included both the father's stock and an indebtedness owing by the corporation to him in the sum of $97,-347.97. On closing of this purchase contract, $100,000 was paid in cash, which sum was raised by a sale of certain of the corporation's real estate and an increase in a bank loan to the corporation. The balance of the purchase price, in the sum of $90,000, was represented by a promissory note executed by the mother, the son and the corporation as makers. At the time of closing, all stock purchased was taken in the mother's name, who, in turn, pledged all stock purchased together with that already owned by her to the father to secure the balance owing on the purchase contract. In addition, the corporation gave a second

mortgage on all its remaining real estate to the father to secure the balance of the purchase price.

The balance due on the purchase price was to be payable at the rate of $9,000 per year for a period of ten years, but in 1960 the corporation increased its corporate indebtedness again, and paid off the remaining sums owing to the father.

All of the stock in the corporation, with the exception of the nominal share owned by the son and one other share of stock in the name of the corporate attorney, remained in the mother's name until the mother sold all of the outstanding stock of the corporation to third parties on February 5, 1964. The son objected to such sale and after the same was consummated instituted this action. The judgment below granted to the son a money judgment equivalent to one-fourth of all amounts received by the mother on the 1964 sales contract to the date of trial, without any deduction for expenses of sale, and in addition decreed that the son was entitled to one-fourth of all amounts to be received by the mother in the future under the sales contract, again without any deductions for expenses of sale or otherwise.

The complaint filed in the superior court sounds in contract. It alleges that, when the father's stock was purchased in 1955, the mother and son agreed to jointly manage and operate the business of the corporation and to pay the purchase price from monies derived from the corporation. According to the complaint, it was agreed that when the purchase price was paid in full, the stock so purchased was to be jointly owned by the mother and son. There is allegation that because of the confidential relationship between the parties, the son permitted the capital stock to be taken in the mother's name and to so remain until the sale to third parties in 1964.

The prayer of the complaint asks for a money judgment for the son's share of monies received from the sale, that a lien be fixed on any instruments of security representing the balance of the sales price

and that the mother be ordered to transfer to the son his share in the contract of sale. The answer filed is substantially a general denial and there is no counterclaim.

The pretrial order in the action states in part:

"The nature of the action is a claim for debt."

The issues framed by the pretrial order are:

"(1) What was the intention of the parties as to Plaintiff's connection with the contract?

"(2) Has Plaintiff devoted time to the running of the corporation by management of the land or otherwise, which is chargeable toward the paying of the contract, and if so, how much?"

The pretrial order further recites:

"It is stipulated that the contract was paid off from property owned by Marana Plantations, Inc."

The son demanded a jury trial, and the case was so tried. At the conclusion of the plaintiff's case, the plaintiff was permitted, without objection, to amend the complaint to allege that the contract between the son and mother pertained both to the father's stock and to the indebtedness owed by the corporation to the father.

The case was submitted to the jury upon a special verdict which was returned as follows:

"We, the Jury, * * * do find that the Plaintiff and Defendant, prior to the acquisition of the stock of Halden E. Birt, *did* enter into a contract between them to buy that stock together and thereafter own it in equal shares."

There was no objection to the form of this verdict by either party and there was no request that any additional issues be submitted to the jury.

At the conclusion of the trial, the court directed the plaintiff's counsel to prepare a formal written judgment in accordance with the verdict. Counsel at this time waived notice of entry of judgment. After

the submission of a formal judgment which would have granted to the plaintiff a money judgment in the full amount of $170,384.-05, this being one-fourth of the full purchase price of the stock sold by the mother, the mother filed objections to the form of judgment which contended that there was no basis for the rendition of a money judgment. According to the objections filed, "[f]urther proceedings * * *" would be required to determine the nature and the amount of the judgment to be entered.

At the hearing upon the objections to the form of judgment, the court ruled, over the objections of the son's counsel, that the court would hear further evidence as to the amount of judgment that should be rendered. Thereafter, again over the objection of plaintiff's counsel, the court proceeded to hear evidence from an accountant who testified that in large measure the monies paid to the father for the purchase of his stock and his indebtedness were credited against amounts owing to the mother by the corporation and that it was in this manner that the purchase of the father's interest had been handled on the corporate books. The books of account of the corporation were for the first time offered in evidence at this hearing. At this hearing, also for the first time, the mother contended that the expenses of sale should be charged proportionately to the son. Without waiving his objection to the proceeding, the son stipulated to the amount of expense incurred in the sale of the stock.

The trial court after listening to this evidence, denied any offset, stating, in part:

" * * * I am inclined to feel that what the jury found was that this agreement they were entering into where she was agreeing that if he would come in and help on the farm, help run it, that then as soon as they paid off this obligation to the father, or any obligation incurred in paying that off, such as the refinancing, that then the ownership would be three-quarters for her and one-quarter for him, and I believe that had the proposition ever been presented to the jury that they would have felt that she wasn't inclined or wasn't intending to keep books and have herself repaid for the amount that she was owed or anything like that."

On appeal, the only questions presented are whether the amounts paid to the father which were credited on the corporate books against amounts owing by the corporation to the mother should be offset against the judgment rendered to the son and whether the son should be charged with one-fourth of the expenses of sale. If such items are offset, it is the mother's contention that the money judgment rendered would be reduced from $61,658.46 to $4,119.75.

The mother argues that the son's claim was one establishing a constructive trust and that the law is well established that a constructive trustee is entitled to be reimbursed for monies advanced towards the purchase of the trust res.[1] The son's contention on appeal is that the action is primarily one in contract, or for conversion, and not one imposing a constructive trust, but that, in any event, the mother's claim for an offset was waived because not properly raised prior to or during the trial of the action.

We do not find it necessary to decide the proper appellation for the legal theory giving rise to a judgment in the plaintiff's favor.[2] We believe the following language in Rule 13(a), Arizona Rules of Civil Pro-

1. This appears to be good substantive law. See Restatement, Restitution, § 194, Comment b. However, it is at least doubtful that a trustee who has wrongfully sold trust property in violation of the trust agreement is entitled to recover the expenses incurred in such a sale. See Restatement (Second), Trusts § 245.

2. Substantive law appears to give the cestui of a trust, when the trust property has been wrongfully disposed of by the trustee, a choice of remedies:

"§ 202. Following Trust Property into Its Product

"(1) Where the trustee by the wrongful disposition of trust property ac-

cedure, 16 A.R.S., to be dispositive of this appeal:

"A pleading shall state as a counterclaim any claim which at any time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction."

The following is deemed to be helpful in understanding the inclusiveness of this compulsory counterclaim concept:

"Rule 13 applies to two types of claims: counterclaims and cross-claims. *Under this rule a counterclaim is any claim, including set-off and recoupment, which one party has against an opposing party, whether legal or equitable, or both.* Thus any claim which a defendant has against the plaintiff is a counterclaim; * * *." (Emphasis added)
3 Moore, Federal Practice § 13.02, pp. 7–8

The mother cites Valley Gin Co. v. McCarthy, 56 Ariz. 181, 106 P.2d 504 (1940), in support of a contention that the mother's claim for reimbursement was not a "counterclaim" because it was not a " * * * cause of action in favor of defendant upon which he might have sued the plaintiff and recovered judgment in a separate action." (56 Ariz. at 187, 106 P.2d at 507.)

We do not find the *Valley Gin* case to be pertinent to the probem now before us. The court was not concerned with the waiver of a compulsory counterclaim but with a question pertaining to the doctrine of

res judicata. The decision is not concerned with the meaning of Rule 13(a), supra.

More pertinent, we believe, is the decision of Fletcher v. State ex rel. Morrison, 90 Ariz. 251, 367 P.2d 272 (1961). In that case, the state sought to condemn certain land and the defendant counterclaimed to rescind a transaction wherein the defendant had previously granted to the state for a consideration of $3,270 an easement over certain other land adjoining that sought to be condemned. The theory of the counterclaim was that the state had anticipatorily breached the easement contract pertaining to this other land. The state filed a responsive pleading to the counterclaim stating that it could not perform under the easement contract and asking that the land covered by the easement be condemned. This responsive pleading failed to request a return of the consideration paid for the easement. The trial court allowed an offset to the state in the sum of $3,270 against the amount found to be the damages in the condemnation action and, on appeal, the Supreme Court reversed, holding that by failing to plead the $3,270 offset the state had, under Rule 13(a), waived this claim. In view of the nature of the landowner's claim, based on the law of anticipatory breach, it is apparent in *Fletcher* that the state could not have maintained an independent action to recover the amount paid for the easement.[3]

The instant action went to trial before a jury under a complaint and a pretrial order that clearly put the defendant on notice that a money judgment was being sought in connection with the stock sold by the defendant. The transaction giving rise to this cause of action was the agree-

---

quires other property, the beneficiary is entitled at his option either to enforce a constructive trust of the property so acquired or to enforce an equitable lien upon it to secure his claim against the trustee for damages for breach of trust, as long as the product of the trust property is held by the trustee and can be traced.
"(2) Except as stated in Subsection (1), the claim of the beneficiary against

the trustee for breach of trust is that of a general creditor."
Restatement (Second), Trusts § 202.

3. Applicable law would appear to give the landowner the exclusive option of deciding whether to take any action because of the anticipatory breach. See Restatement, Contracts § 322, Comment a.

ment in 1955 to purchase the father's stock and the subsequent holding of the stock in the mother's name as trustee until the sale to third parties in 1964. The claim for reimbursement now sought to be presented is clearly one arising " * * * out of the transaction or occurrence that is the subject matter of the opposing party's claim * * *." The law does not favor piecemeal trials. 88 C.J.S. Trial, § 9, pp. 31–33; 53 Am.Jur. Trial, § 53, p. 62. In this state, a party is entitled in an equity action to a jury as a matter of right. Lane v. Mathews, 75 Ariz. 1, 251 P.2d 303 (1952). The issues of this case not having been separated for trial by an order of court prior to trial, all issues went to trial to the jury. We hold that after the jury trial it is too late to raise for the first time the question of reimbursement, as was sought to be done here.

Judgment affirmed.

KRUCKER, C. J., and HATHAWAY, J., concur.