397 P.2d 71

**Thomas G. HURST and Louise V. Hurst, his wife, Plaintiffs and Appellants,**

**v.**

**HIGHWAY DEPARTMENT of The State of Utah, and Robert V. Burgraff Construction Company, Defendants and Respondents.**

**No. 10089.**

Supreme Court of Utah.

Dec. 7, 1964.

Howard & Lewis, Jerry G. Thorn, Provo, for appellants.

A. Pratt Kesler, Atty. Gen., Joseph S. Knowlton, F. Robert Bayle, Salt Lake City, for respondents.

**154**

CROCKETT, Justice.

The plaintiffs Hurst sued the Utah Department of Highways and Burgraff Construction Company, asking for injunctive relief and for damages because of the operation of a gravel pit near plaintiffs' home in Orem, Utah.

The district court granted the motion of the Department of Highways to dismiss the complaint [1] as to it on the ground of sovereign immunity.[2]  Plaintiffs appeal.

■ In view of the dismissal, we are obliged to accept the facts set forth in the plaintiffs' complaint, the essentials of which are: Since 1959, a gravel pit near plaintiffs' home in Orem belonging to the State has been in operation.  During that time over 100,000 yards of aggregate material has been removed for the purpose of building highways.  The actual removal is done by contractors whose bids for building roads and bridges make allowance for the privilege of using the State's materials from this pit.  The other defendant, Burgraff, who is not involved in this appeal, was joined because he was such a contractor using the pit at the time this action was brought.

Plaintiffs allege that the operation of the gravel processing plant and other necessary equipment is very noisy and produces a great deal of dust and smoke which come onto their property, hazarding their health and interfering with the enjoyment of their home, which they aver, causes the damages sought and constitutes a nuisance.

Plaintiffs assail sovereign immunity as an outmoded defense which should be abandoned.  It is not our purpose in this opinion to justify the various bases sometimes given as its foundation: that the king (sovereign) can do no wrong; or, that inasmuch as the sovereign is the creator of the courts, it is anomalous to consider that the court has jurisdiction and control over its actions.[3]  For reasons to be stated below, the validity or invalidity of those ideas is not now of any great importance to us.  However, we do think it appropriate to point out that the doctrine serves a practical purpose in connection with the operations of public affairs.  It has the effect of relieving the government of the trouble and expense of claims or lawsuits from alleged misdoings of its servants;[4]  and from resulting judgments which could be particularly burdensome because juries may look upon the state treasury as the proverbial "deep pocket" with inexhaustible resources.  Where the government is rendering services vital to

1.  U.R.C.P., Rules 12(b) (6), 12(b) (1).
2.  That the Department of Highways is an agency of the State protected by sovereign immunity, see State by State Road Commission v. Fourth District Court, 94 Utah 384, 78 P.2d 502.

3.  See authorities cited in Driggs v. Utah State Teachers Retirement Board, 105 Utah 417, 142 P.2d 657, 660.
4.  E. g., the week this opinion is written the Board of Examiners set hearings on claims aggregating over $330,000.

the public welfare, and in doing so comes in conflict with the rights or interests of individuals, it is often essential that the latter be subordinated to the necessities of society as a whole. Whatever its basis or its merit may or may not be, the practical value of sovereign immunity in carrying on governmental functions has proved to be such that, as a matter of public policy, it has continued to receive the approval of most jurisdictions in this country, except where changed by statute.[5]

Whether there is logical and just foundation for the doctrine is not now an open question to us. The controlling consideration here is that in spite of numerous attacks upon it, this court has uniformly rejected them and retained it in our law.[6]

■ Plaintiffs argue that a distinction should be made between those former cases, which have been mostly actions relating to property rights or damages for injuries, and the maintenance of a continuing injury, such as is alleged here. We appreciate that some courts have made this distinction and have allowed relief against government in cases involving, nuisance though not doing so for mere negligence; and that the case of Shaw v. Salt Lake County, relied on by the plaintiffs, is pertinent in that regard.[7] We, of course, willingly agree that there is a difference between negligence and nuisance. But we confess our inability to see in that distinction any logical basis for holding that suit for a "nuisance" would be maintainable against the state, while a suit for "negligence" would not. As pointed out by the eminent authority on torts, Dean Prosser, the cases making this distinction and allowing actions based on nuisance, while rejecting those based on negligence, actually arise out of disapproval of sovereign immunity and represent attempts to limit its application.[8]

■ In a case such as this sovereign immunity is either available to the state as a defense or it is not. Whether the cause of action can be maintained against the government should not depend upon the adjectives used in the complaint to describe it. Attempts to make such distinctions lead to tenuous and unrealistic rationalizations difficult to apply and impossible in logic to justify. We decline to follow such a course,

5. See 81 C.J.S. States § 214; 49 Am.Jur., States, § 91.
6. State By and Through Road Commission v. Parker, 13 Utah 2d 65, 67, 368 P.2d 585, 587 (1962); Bingham v. Board of Education, 118 Utah 582, 223 P.2d 432; Cobia v. Roy City, 12 Utah 2d 375, 376, 366 P.2d 986 (1961); Springville Banking Co. v. Burton, 10 Utah 2d 100, 349 P.2d 157 (1960); State by State Road Commission v. Fourth District Court, 94 Utah 384, 78 P.2d 502 (1937); see Fairclough v. Salt Lake County, 10 Utah 2d 417, 418, 354 P.2d 105, 106 (1960) where other cases are listed.
7. 119 Utah 50, 224 P.2d 1037; see cases listed therein at page 1039.
8. See Prosser, Torts, § 125, p. 1010 (3d Ed. 1964).

but rather adhere to the former declarations of this Court. If this doctrine, so long firmly embedded in the structure of our law, is to be changed, such change should come from the repository of the sovereign power itself, the people, speaking through their chosen representatives in the legislature.[9]

For the same reasons stated above we cannot subscribe to the proposition urged upon us by the plaintiffs that even if it be held that an action against the state for damages cannot be maintained, a suit for an injunction to prevent the continuance of an injury could. The case of State by State Road Commission v. Fourth District Court [10] was such an action for an injunction against the State Road Commission, and it was held not maintainable because of sovereign immunity. There has been no change in the law since, but rather that ruling has been assumed to be correct.[11] And in the case of Davis v. Provo City Corp.,[12] this Court indicated clearly that a suit to enjoin a nuisance was not an exception which would pierce sovereign immunity.

In regard to the argument that the trial court's action permits an arbitrary invasion of the plaintiffs' right to the enjoyment of their home without affording them a remedy, it is to be observed that no one has any absolute rights, but they are all conditioned upon the rights of others. Everyone in a well-ordered society must make some concessions of his individual rights and desires in deference to the common good and in recompense for all of the other rights and protections accorded him by the entire structure of the law.

In this case we do not confront the problem and are not required to decide whether under some circumstances the conduct of the state agency might be so aggravated and so injurious to private rights in proportion to any benefit to the public that in good conscience it should not be allowed to continue. In that connection it is appropriate to note that where conditions exist which are dangerous to life or health, both state and local boards of health have power and are charged with the duty of abating them.[13] It is usually held that an aggrieved party must pursue whatever administrative remedies are available to correct such conditions before appealing to the courts for relief.[14] In this case it is sufficient to say

9. See Davis v. Provo City Corp., 1 Utah 2d 244, 265 P.2d 415.

10. Note 2, supra.

11. See Hjorth v. Whittenburg, 121 Utah 324, 241 P.2d 907.

12. Note 9, supra.

13. Secs. 26-15-4 and 26-5-5, U.C.A. 1953.

14. See Pacific Intermountain Express Co. v. State Tax Comm., 7 Utah 2d 15, 316 P.2d 549 (1957).

that upon the basis of the record the trial court could reasonably determine that there was nothing of any such extreme character here involved and dismiss the action. We have concluded as indicated in this decision regardless of what may have been said in the case of Shaw v. Salt Lake County [15] referred to above.

Affirmed. No costs awarded.

HENRIOD, C. J., and McDONOUGH and CALLISTER, JJ., concur.

WADE, Justice (dissenting).

I dissent. I think we should follow the decision in the case of Shaw v. Salt Lake County.[1] Therein, Mr. Justice McDonough, speaking for the Court, said:

"The principal of sovereign immunity is not one which allows the sovereign to continue to inflict injury, but rather, one which absolves the sovereign from responding in damages for past injuries."

This states a clear and correct basis for a limitation on the doctrine of sovereign immunity, which I think would be very much in the interest of justice and fair play between the state and its citizens. I know of no decision which has changed that ruling and feel that it should be upheld.

15. Note 7, supra.