Royal Nordell ALLRED, Plaintiff
and Appellant,

v.

Mark E. COOK, Bryant Madsen, Kenneth
R. Strate and Tom Mower, Defendants
and Respondents.

No. 15688.

Supreme Court of Utah.

Jan. 11, 1979.

Gerald E. Nielson, Salt Lake City, for plaintiff and appellant.

Robert C. Fillerup, Robert L. Moody, Provo, Allan L. Larson, Salt Lake City, Don R. Strong, Springville, Dan S. Bushnell and Bruce Findlay, Salt Lake City, for defendants and respondents.

ELLETT, Chief Justice:

Plaintiff, a former superintendent of the North Sanpete School District, brought suit against three members of the North Sanpete School Board and against one private citizen, alleging that he had been slandered by them. The trial court granted defendants' motions to dismiss on the grounds that defendant Mower had a constitutional right to participate in the election process, that the complaint did not state a prima facie case for slander, and that the other defendants' statements were privileged rendering them immune from suit.

Plaintiff brings this appeal, claiming error in that the complaint was sufficient to allege slander *per se* and that no immunity or privilege exists to protect the defendants from liability.

Since this appeal is based upon the dismissal of the complaint, this Court must accept the plaintiff's description of facts alleged in the complaint to be true, but we need not accept extrinsic facts not pleaded nor need we accept legal conclusions in contradiction of the pleaded facts.[1]

1. *Hurst v. Highway Dept.*, 16 Utah 2d 153, 397 P.2d 71 (1964); *Heathman v. Hatch*, 13 Utah 2d 266, 372 P.2d 990 (1962).

The complaint stated the following:

Plaintiff had been the superintendent of schools of the North Sanpete School District and enjoyed an excellent reputation as an effective school administrator in his community. Defendants conspired to remove him from his position and told many people of their desire to do so. They attacked the qualifications of plaintiff and, with the assistance of defendant Mower, sought and obtained election to membership of the school board of the North Sanpete School District. On May 23, 1977, defendants Cook, Madsen, and Strate spoke with plaintiff in defendant Strate's car. The following conversation ensued:

Defendant Cook: "You have interfered with us for the last time, we want your resignation."

Defendant Madsen: "And we want it within twenty-four hours."

Defendant Cook: "We have twenty-seven charges against you and if you do not resign, we will bring those charges out in public at the next Board meeting."

Defendant Strate: "I feel I have to go along with these men in this problem."

After this conversation, each defendant told many persons of their claim that they had twenty-seven charges against plaintiff which would be brought out publicly in the next meeting of the Board and a "public outcry" resulted. Defendant Strate appeared at a Spring City town meeting which was called by interested citizens wherein he said that "they [the defendants] had twenty-seven charges against the superintendent [the plaintiff] and he invited the people to 'Come to the Board meeting and see what they are.'" The Board meeting referred to was a public meeting held on May 26, 1977.

At the meeting held on May 26, 1977, the defendants declined to specify any charges against the plaintiff except for the charge of inadequate leadership in that the plaintiff did not have the support of the majority of the Board. De-

fendants have never specified any charges against plaintiff.

Defendants have told many persons privately of the charges and have fed and encouraged rumors and such rumors were made intentionally, deliberately, maliciously, and recklessly for the purpose of injuring plaintiff in his employment, in his profession, and in his reputation for the purpose of increasing their own influence over the affairs of the school board.

Plaintiff further states that even if the rumors are widely disbelieved that some persons will believe them or entertain doubts so that plaintiff will be disadvantated in his relationships with them, and that he will be rendered "less effective." Plaintiff cannot deny the charges because he does not know what they are but claims that the defendants made the statements in reckless disregard of the effect they would have upon plaintiff.

The plaintiff claimed general damages and punitive damages against the defendants but expressly waived any claim against the North Sanpete School District.

No special damages were alleged in the complaint.

■ In order to constitute slander *per se*, without a showing of special harm, it is necessary that the defamatory words fall into one of four categories: (1) charge of criminal conduct, (2) charge of a loathsome disease, (3) charge of conduct that is incompatible with the exercise of a lawful business, trade, profession, or office; and (4) charge of the unchastity of a woman.[2] If the words spoken do not apply to one of the foregoing classifications, special harm must be alleged. The defamatory words are actionable if they impute a want of capacity or fitness for engaging in the plaintiff's profession or if they render him unfit to fulfill his duties.[3]

■ The general rule is that if special damages are not alleged, the slander must

2. 50 Am.Jur.2d, Libel & Slander, Sec. 10.

3. 50 Am.Jur.2d, Libel & Slander, Secs. 104 and 106.

amount to slander *per se* before recovery is allowed.[4] Slander *per se* does not require a showing of special damage because damages and malice are implied.[5]

██ Whether defamatory words constitute slander *per se* depends on their injurious character. That is, the words must be of such common notoriety that the injury can be presumed from the words alone.[6] The *Nichols* case, *supra*, at pages 77–78, 83 P. at 574 applied the following test:

> When language is used concerning a person or his affairs which from its nature necessarily must, or presumably will, as its natural and proximate, consequence, occasion him pecuniary loss, its publication is libelous per se. [Citations omitted.]
>
> The nature of the writing must be such that the court can legally presume that the plaintiff has been damaged. [Citations omitted.]
>
> . . . Except where this presumption exists, special damages to the plaintiff's reputation must be alleged and proved to have been the actual and natural result of the language used. [Citations omitted.]

We further stated in *Nichols* that it must be seen that as a necessary consequence, plaintiff was damaged in some material manner. In that case, the evidence did not demonstrate that the plaintiff had been injured in his profession so that slander *per se* would lie. The words in issue did not impute such a meaning by themselves and the plaintiff failed, by way of innuendo or otherwise, to place such a meaning upon the words; therefore, this Court found that the complaint was defective since the words alleged as slanderous did not import charges of damage to the plaintiff's professional reputation.[7] In other words, if the statement made is capable of *two* interpretations, one interpretation which might refer to his professional reputation and one which might refer to his personal character, it cannot be slander *per se*.[8]

██ Plaintiff has alleged that the statement made by the defendants that they had twenty-seven charges against him inferred criminal conduct on his part. This is not necessarily so. While some individuals might interpret that statement as criminal in nature, others would not. The "charges" could just as easily have implied conduct attributable to his individual character; and if so, they are not actionable since slander *per se* must relate to plaintiff's professional reputation, not his personal reputation. Since defendants did not specify the substance of the charges, they are capable of two interpretations, thus, they cannot be recognized as slander *per se*.

In *Beatty v. Ellings*[9] the plaintiff claimed that certain interested private citizens and public officials had conspired to defame him. The Supreme Court there found no conspiracy but only that the defendants shared a common interest in the city project and were not favorably disposed to plaintiff's position. They further found that the words spoken arose out of a public controversy and involved utterances relating to that controversy, which utterances, even if defamatory, were not actionable since they did not necessarily connote an accusation resulting in slander. The court explained it in the following manner:

> . . . Defamatory words spoken concerning a professional man are not actionable per se unless spoken *with direct reference to his professional activity.* . . . Plaintiff did allege that [the] reference to him as a liar and [the] reference to him as needing psychiatric consultation were damaging to him "both professionally and otherwise"; but as to all

---

4. *Western States Title v. Warnock*, 18 Utah 2d 70, 415 P.2d 316 (1966).

5. *Nichols v. Daily Reporter Co.*, 30 Utah 74, 83 P. 573 (1905).

6. *Western States Title v. Warnock*, supra.

7. *Nichols v. Daily Reporter*, supra at 79, 83 P. 573.

8. *Id.*

9. 285 Minn. 293, 173 N.W.2d 12 (1969), *cert. denied*, 398 U.S. 904, 90 S.Ct. 1694, 29 L.Ed.2d 63 (1970).

other spoken words he alleged only that they were damaging to his "reputation." The statements . . . were no more directed to plaintiff's professional activity than were those of any other of the defendants. [Emphasis added.]

The court went on to point out that the plaintiff had failed to show that his profession had suffered as a result of any act of the defendants.

This is closely aligned with the situation here. The words spoken by the defendants had no direct reference to plaintiff's professional capabilities. He made no allegation that he had been harmed because of the statements but generalized in futuristic terms that even if the rumors were disbelieved by some, enough people would have doubts so that he would become "less effective." The conspiracy plaintiff alleged was for the purpose of increasing the defendants' influence over the affairs of the school board by forcing his resignation. There is no more conspiracy here than was found in the *Beatty* case. The defendants here, as there, shared a common interest and were not in favor of plaintiff's position. The dispute arose from a controversy in which the public was genuinely interested. The defendants had a responsibility to the school board which included hiring and firing, and this is not enough to find a conspiracy to defame plaintiff for purely personal gain.

■ Since the statements made, even if defamatory, did not specifically relate to plaintiff's profession but were general enough in nature to also relate to his personal character and which could only be proved with the aid of innuendo, they cannot constitute slander *per se*. Therefore, it is necessary that special damages be alleged before plaintiff can successfully maintain his suit. The complaint was defective in that plaintiff claimed no special damage.

■ Plaintiff's complaint also implies that his future employment may be harmed but does not allege any actual harm. Words that are only possibly injurious to some future happening will not give rise to a cause of action under either *per se* or *per quod* defamation.[10] It is correct, as plaintiff states, that Rule 9(j)(1), of the Utah Rules of Civil Procedure does not require a showing of extrinsic facts to support the defamatory words; however, it is necessary to show that as a consequence of those words, plaintiff has suffered actual harm. There was no damage occasioned by the words used. The only damage which could come to the plaintiff would be that the defendants had fired him from his position, and the plaintiff makes no such contention in his complaint.

■ As to the defendant Mower, the only allegation against him is that he helped the other defendants obtain election to the school board. Mower is a private citizen and as such he has a constitutional right to participate in the election process as he may choose. Nothing more need be said on this point and the trial court correctly ruled that plaintiff failed to state a claim upon which relief could be granted as to this particular defendant.

■ Plaintiff has alleged malice on the part of the defendants but the factual allegations in his complaint do not support this contention. It is clear that the defendants sought to become members of the school board, that they did not approve of plaintiff's policies, and that they sought to remove him from his position. This is not sufficient to imply malice for purposes of slander *per se* nor is it sufficient to demonstrate actual malice which is defined as knowledge that the statements were false or made with reckless disregard of whether they were false or not. The plaintiff has admitted that he does not know what the "charges" are; therefore, he is unable to allege that they were known by the defendants to be false in order to support his claim of malice. It is also established that gener-

---

10. *Nichols, supra* at 79, 83 P. 573; *Gibson v. Kincaid,* 140 Ind.App. 186, 221 N.E.2d 834 (1967).

al and punitive damages are not recoverable without a showing of actual malice.[11]

The trial court correctly ruled that plaintiffs complaint failed to state a cause of action. The issue as to whether or not the defendants' statements were privileged and, therefore, immune need not be reviewed since we hold that the plaintiff has failed to state a cause of actionable slander. We therefore, decline to discuss this issue at the present time.

The judgment is affirmed. No costs are awarded.

CROCKETT, MAUGHAN and HALL, JJ., concur.

WILKINS, J., concurs in result.

**11.** *Thomas H. Maloney & Sons, Inc. v. E. W. Scripps Co.,* 43 Ohio App.2d 105, 334 N.E.2d  494 (1974), *cert. denied* 423 U.S. 883, 96 S.Ct. 151, 46 L.Ed.2d 111 (1975).