Garn L. BAUM, Plaintiff and Appellant,

v.

Harley GILLMAN, Defendant and Respondent.

No. 17755.

Supreme Court of Utah.

June 30, 1983.

Robert Macri, Salt Lake City, for plaintiff and appellant.

Jerry L. Reynolds, Dallas H. Young, Jr., Provo, for defendant and respondent.

HALL, Chief Justice:

Plaintiff (Baum) brought this action for both libel and slander alleged to have been committed by defendant (Gillman) during the course of an interview with a newspaper editor. However, inasmuch as the statements complained of were alleged to have been made orally, and not in writing, they only support an action for slander.

The complaint, as amended, set forth 13 causes of action for slander. The trial court dismissed 12 of the causes for failure to state a claim, and Baum appeals. The remaining cause was disposed of by summary judgment in favor of Gillman and no appeal is taken therefrom.

This lawsuit is one of several between Baum and Gillman. Gillman and other fruit growers heretofore obtained a judgment against Baum and others for sums due for sour cherries delivered in 1973. Baum brought an anti-trust action in federal court against Gillman, other fruit growers and the LDS Church.[1]

In years past, Baum was engaged in a fruit processing business. In 1974, Baum suffered a mortgage foreclosure on his processing plant and the property was purchased at foreclosure sale by the LDS Church. Baum has not since engaged in the fruit processing business.

In 1979, the CBS television program "60 Minutes" highlighted certain of the events which gave rise to the various legal proceedings which involved the parties hereto and the LDS Church. This apparently prompted the newspaper interview which forms the basis of the instant lawsuit.

On this appeal, Baum contends that his amended complaint adequately states a cause of action. Gillman's rejoinder is that the complaint is deficient in that: 1) it fails to allege that the statements made were known to be false or that they were made with reckless disregard for their truth or falsity; and 2) it fails to allege special damages which are necessary since the statements made were not defamatory *per se.*

The amended complaint recounts the following statements as having been made by Gillman: 1) Baum caused his trees to die; 2) the growers did not deal with Baum because he did not pay as agreed; 3) Baum was in poor financial condition; 4) some growers were not paid at all; 5) Baum threw four of the biggest growers out of his house; 6) Baum's bond paid a "little bit" to the growers; 7) Baum had used "our money" to pay creditors;[2] 8) Baum was the victim of a suit "initiated" by several growers; 9) Gillman urged other growers not to deal with Baum because he was "broke," and also urged them to join in a suit against him; 10) Baum was indebted to Gillman in the amount of $20,000; 11) Baum took $50,-000, paid lawyers $17,000, and filed suit "against the Church"; and 12) Gillman told one Glen Carlson that Baum would be out of business within a year.

The complaint made a demand for general damages in the amount of $300,000, but contained no allegation of special damages. As was observed in *Allred v. Cook:*[3]

The general rule is that if special damages are not alleged, the slander must amount to slander *per se* before recovery is allowed. Slander *per se* does not require a showing of special damages because damages and malice are implied. [Citations omitted.][4]

Inasmuch as the complaint contains no allegation of special damages, in order to state a claim upon which relief can be granted the statements attributed to Gillman must constitute defamation *per se.*[5]

---

1. *Baum v. Gillman,* 648 F.2d 1292 (10th Cir. 1981).

2. Contrary to the conclusion reached in the dissent, this is not an allegation of dishonesty. Baum did not have the growers' money. He had their cherries. The purported statement implies that Baum preferred other creditors.

3. Utah, 590 P.2d 318 (1979).

4. 50 Am.Jur.2d Libel and Slander § 9.

5. *Allred v. Cook, supra,* footnote 2; *Western States Title Insurance Co. v. Warnock,* 18 Utah 2d 70, 415 P.2d 316 (1966); *Nichols v. Daily Reporter Co.,* 30 Utah 74, 83 P. 573 (1905).

In order to constitute defamation *per se,* the defamatory words must charge criminal conduct, loathsome disease, conduct that is incompatible with the exercise of a lawful business, trade, profession, or office, or the unchastity of a woman.[6] Whether the defamatory words are actionable *per se* is to be determined from their injurious character. The words must be of such common notoriety that damage can be presumed from the words alone.[7] The test is as was applied in *Nichols v. Daily Reporter Co.*[8]

> When language is used concerning a person or his affairs which from its nature necessarily must, or presumably will, as its natural and proximate consequence, occasion him pecuniary loss, its publication is libelous per se. [Citations omitted.]

> The nature of the writing must be such that the court can legally presume that the plaintiff has been damaged. [Citation omitted.]

> ... Except where this presumption exists, special damages to the plaintiff's reputation must be alleged and proved to have been the actual and natural result of the language used. [Citations omitted.]

▉ Application of the foregoing test in the instant case prompts the conclusion that the complaint does not allege defamation *per se.* None of the allegations contained in the complaint, as set forth *supra,* are such that the Court can legally presume that Baum has been damaged because they clearly do not impute criminal conduct, loathsome disease, conduct incompatible with the exercise of a lawful business or unchastity. While it is true that the statements impute poor business practices in the past, such must be viewed and considered in light of the fact that Baum had been out of the fruit processing business since 1974 and the newspaper article did not appear until 1979, five years later. Furthermore, the complaint does not contain any allegation that Gillman's statements damaged Baum

in any current business endeavor or pursuit. Statements which may only be injurious to some future happening do not give rise to a cause of action for either *per se* or *per quod* defamation.[9]

The judgment of the trial court is affirmed. No costs awarded.

OAKS, HOWE and DURHAM, JJ., concur.

STEWART, Justice (dissenting):

The issue on this appeal is whether the allegations of the complaint "compel the conclusion that no claim for relief has been stated. . . ." *E.g., Motivated Management International v. Finney,* Utah, 604 P.2d 467 (1979) (emphasis added). I do not think that standard has been met in this case. The majority affirms the dismissal of the complaint on the ground that the plaintiff has failed to allege special damages. Since the complaint does allege claims for relief that are defamatory per se, it is not necessary either to plead or to prove special damages. I respectfully dissent.

The complaint alleges, *inter alia,* that the defendant stated that Baum did not pay as agreed, was in poor financial condition, and had used fruit growers' money to pay creditors. The nub of these and other allegations is that the plaintiff was dishonest and incompetent in his business. An accusation of dishonesty is defamatory per se and requires no pleading of special damages. *Prince v. Peterson,* Utah, 538 P.2d 1325 (1975); *Combes v. Montgomery Ward & Co.,* 119 Utah 407, 228 P.2d 272 (1951). In addition, the allegations as to Gillman's insolvency clearly reflect directly on Baum's ability competently to conduct a lawful business and are also defamatory per se, requiring no pleading of special damages. *Allred v. Cook,* Utah, 590 P.2d 318 (1979).

The law has long recognized that several classes of defamation are slanderous per se including both of those mentioned above.

6. *Id.*

7. *Allred v. Cook, supra,* footnote 2.

8. *Supra,* footnote 4.

9. *Allred v. Cook, supra,* footnote 2.

Furthermore, an allegation of dishonesty, coupled with the assertion of insolvency, clearly affects the plaintiff's ability to engage in, or to remain in, a lawful business. Dean Prosser has stated:

"The law has always been very tender of the reputation of tradesmen, and therefore words spoken of them in the way of their trade will bear an action that will not be actionable in the case of another person." The likelihood of "temporal" damage in such a case is sufficiently obvious; and the rule was soon extended to cover anyone engaged in a business or profession, or holding a public or even a private office. Any calling is included, "be it ever so base," but it must be a legal one, entitled to such a sanction. Furthermore, since the object of the exception is to protect the plaintiff in his office or calling, it was decided quite early that it must appear that he held or was engaged in it, or at least about to be so engaged, when the words complained of were published.

For the same reason, the exception was limited to defamation of a kind incompatible with the proper conduct of the business, trade, profession or office itself. The statement must be made with reference to a matter of significance and importance for that purpose, rather than a more general reflection upon the plaintiff's character or qualities, where such special significance is lacking.

W. Prosser, *Law of Torts*, pp. 757–58 (4th ed.). *See also Id.* at 754–56.

Since this case was decided at the pleading stage, there is no way of knowing what factual substance there is to the allegations which have been laid. It is not, however, for this Court to make a determination of the validity of allegations charged in the complaint. If the complaint states a cause of action upon which relief may be granted, that ends our inquiry. Neither the truth of the allegations nor the applicability of any other defenses are before us. I submit that the plaintiff has a right to go to the trier of fact on at least those allegations which allege slander per se claims for relief.

For these reasons I dissent.