977 F.2d 595
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Steven Wayne AGEE, Plaintiff-Appellant,
v.
MORTON THIOKOL, INC., a Delaware corporation, Defendant-Appellee.
 No. 91-4066.
 United States Court of Appeals, Tenth Circuit.
 Aug. 31, 1992.
 
 Before EBEL, Circuit Judge, McWILLIAMS, Senior Circuit Judge, and EISELE, Senior District Judge*.
 ORDER AND JUDGMENT**
 EBEL, Circuit Judge.
 
 
 1
 Steven Wayne Agee, the plaintiff-appellant, brought suit against his former employer, Thiokol Corporation ("Thiokol," formerly Morton Thiokol, Inc.), on the grounds that Thiokol defamed him and intentionally interfered with his prospective economic relations when his supervisor told a prospective employer that he had been terminated because his work was "unacceptable." The district court granted Thiokol's motion for summary judgment, and Agee appeals.
 
 I. BACKGROUND
 
 2
 Thiokol is a major aerospace and defense contractor of the United States Government. Agee began working as an aerospace engineer in the systems safety unit at Thiokol's Wasatch plant on November 9, 1986. His job involved reviewing, reevaluating, and developing safety hazard analyses on the solid rocket motor for the space shuttle in the wake of the Challenger disaster. Agee was a temporary employee--also known as a "job shopper" or a "contract employee"--and was thus paid by ARC Technical Services, Inc., a "contract house," but supervised by Thiokol.
 
 
 3
 On March 27, 1987, Agee's supervisor, Kerry Sanofsky, terminated him. Thiokol offers two reasons for Agee's termination. First, Thiokol contends, his work was "unacceptable" in that he refused to perform the type of analyses required, he did not understand what he was supposed to analyze, and he was not open to help and instruction. Second, Thiokol could not exceed its predetermined manpower level--i.e., when Thiokol hired a permanent employee, which it did at this time, one of the contract employees had to be let go. Thiokol claims that Agee's unacceptable work made him the first choice for termination under the manpower rule.
 
 
 4
 Six months later, in September 1987, Boeing Aerospace ("Boeing"), overseer of Thiokol under a contract with the National Aeronautics and Space Administration ("NASA"), decided to place a contract employee in Thiokol's systems safety unit to report to Boeing and NASA on the quality of the work being done. Agee was considered for this position.[1] In conjunction with the hiring process, Joe Helmstetter, a representative of Boeing, spoke with Sanofsky. During a conversation that is at the crux of this dispute, Sanofsky informed Helmstetter that Agee probably would not be allowed back on the premises and that he had been fired for unacceptable work.[2] Helmstetter then relayed this information to Clint Rogers, his superior at Boeing. Rogers chose not to offer the position to Agee on this basis because he could not "interface effectively between Thiokol, NASA, and Boeing." Affidavit of J. Clint Rogers, Supp.App. to Opening Br. of Defendant/Appellee Thiokol Corp. [hereinafter Appellee's Supp.App.], Ex. B, at 3.
 
 
 5
 Agee brought this action in the United States District Court for the District of Utah based upon diversity of citizenship, alleging that Thiokol defamed him and intentionally interfered with his prospective economic relations. The district court granted Thiokol's motion for summary judgment on the grounds that (1) the statements at issue were protected by a qualified privilege and Agee failed to show any malice on Thiokol's part to defeat this privilege; (2) the statements at issue were not defamatory because Agee did not show any injury to his professional reputation; and (3) Agee failed to establish a claim for intentional interference with prospective economic relations because he did not show any improper purpose or means on Thiokol's part. See Order, Appellant's App., Doc. 7. Agee now appeals.
 
 
 6
 We have jurisdiction pursuant to 28 U.S.C. § 1291. We review a district court's grant or denial of summary judgment de novo. Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir.1990). Similarly, "[w]e review the state law determinations of the district court de novo, according no deference." Mid-America Pipeline v. Lario Enterprises, 942 F.2d 1519, 1524 (10th Cir.1991) (citing Salve Regina College v. Russell, 111 S.Ct. 1217, 1221-25 (1991)).
 
 II. DISCUSSION
 A. Qualified Privilege
 
 7
 Under Utah law, a statement is conditionally privileged if it is made to protect (1) a legitimate interest of the publisher of the communication; (2) a legitimate interest of the recipient of the communication or of a third person; or (3) a legitimate common interest between the publisher and the recipient of the communication. Brehany v. Nordstrom, Inc., 812 P.2d 49, 58 (Utah 1991). Utah courts have recognized a conditional privilege, also known as a qualified privilege, in both defamation cases, see, e.g., id. at 58-59, and intentional interference with prospective economic relations cases, see, e.g., Leigh Furniture and Carpet Co. v. Isom, 657 P.2d 293, 304 (Utah 1982).
 
 
 8
 We agree with the district court that the communication at issue falls within the protection of a qualified privilege.[3] In fact, all three prongs of Brehany are satisfied. First, Thiokol, the publisher, had a legitimate interest in not wanting Agee back on the premises in light of its business relationship with Boeing. Regardless of whether that relationship was adversarial, allowing a hostile engineer to oversee his former employer might well be detrimental to employee morale and productivity. See Howcroft v. Mountain States Tel. & Tel. Co., 712 F.Supp. 1514 (D.Utah 1989).[4] Second, Boeing, the recipient, had a legitimate interest in learning the employment background of an individual being considering for an important oversight position. See Brehany, 812 P.2d at 58 ("qualified privilege protects an employer's communication to employees and to other interested parties concerning the reasons for an employee's discharge"). Third, Thiokol and Boeing had a mutual common interest in a harmonious and cooperative working relationship. The reason for Agee's discharge and the fact that Thiokol did not want him back on the premises were highly relevant considerations with respect to whether Agee would be able to work as an effective liaison between Boeing and Thiokol.
 
 B. Lack of Malice
 
 9
 In order to defeat a qualified privilege, the plaintiff must show "that the defendant acted with malice or that the publication of the defamatory material extended beyond those who had a legally justified reason for receiving it." Brehany, 812 P.2d at 58 (citation omitted). To show malice, the plaintiff must show (1) "an improper motive such as a desire to do harm" or (2) "that the defendant did not honestly believe his statements to be true." Direct Import Buyers Ass'n v. KSL, Inc., 538 P.2d 1040, 1042 (Utah 1975).
 
 
 10
 We agree with the district court that Agee did not present concrete evidence in opposition to the motion for summary judgment that Thiokol acted maliciously--i.e., that Thiokol desired to harm Agee or acted on the basis of personal hostility or ill will. Thiokol explains that the communication at issue was motivated by a desire to keep the systems safety unit running smoothly, not by "spite, ill-will, or hatred toward Mr. Agee." Appellee's Supp.App. at 2. Agee has presented no specific evidence to the contrary. Nor has Agee shown that the communication at issue exceeded the scope of the privilege. Rather, as discussed supra, the communication at issue was directly related to the common interests shared by Boeing and Thiokol.
 
 
 11
 Accordingly, Agee may defeat the qualified privilege only if he can prove that Thiokol honestly did not believe its statement that Agee's work was unacceptable was true. Agee attempts to do so only by pointing to a memorandum that specifies that the reason for Agee's termination was Thiokol's need to meet its predetermined manpower level after the hiring of a permanent employee. This memorandum is consistent, however, with Thiokol's statement that Agee's unacceptable work made him the first choice for termination under the manpower rule and it therefore does not call Thiokol's belief in its statement into question.
 
 
 12
 For the foregoing reasons, Agee has not satisfied his burden of proving malice.
 
 
 13
 C. Intentional Interference With Prospective Economic Relations
 
 
 14
 In order to recover damages for intentional interference with prospective economic relations, the plaintiff must show, inter alia, improper purpose or means. See Leigh Furniture, 657 P.2d at 304 (to recover for intentional interference with prospective economic relations, plaintiff must prove "(1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) for an improper purpose or by improper means, (3) causing injury to the plaintiff."). We affirm the district court's decision that Thiokol was entitled to summary judgment on plaintiff's claim for intentional interference with prospective economic relations.
 
 
 15
 First, Agee has not established that Thiokol acted with an improper purpose or by improper means. The improper purpose requirement is satisfied only if the improper purpose is the "predominant purpose" behind the acts. Id. at 309 n. 10. Malice and improper purpose are closely related. See id. at 305 (the terms "wrongful or malicious" are "functionally equivalent" to "improper means or improper purpose"). As discussed supra, Agee has not proven that Thiokol acted with malice. It therefore follows that he has not proven that Thiokol acted with an improper purpose.
 
 
 16
 Nor has Agee presented evidence to satisfy the alternative requirement of improper means. This requirement "is satisfied where the means used to interfere with a party's economic relations are contrary to law, such as violations of statutes, regulations, or recognized common-law rules." Id. at 308. "[V]iolence, threats or other intimidation, deceit or misrepresentation, bribery, unfounded litigation, defamation, or disparaging falsehood" are common examples of improper means. Id. Agee has not presented evidence that Thiokol engaged in any of these types of conduct.
 
 
 17
 Finally, as discussed in the following section, Agee has not shown that he suffered any injury.
 
 D. Defamation
 
 18
 The tort of defamation provides redress only if a publication injures the plaintiff's reputation. Cox v. Hatch, 761 P.2d 556, 561 (Utah 1988). We agree with the district court that Agee did not show that he suffered any injury to his professional reputation.[5]
 
 
 19
 Agee argues that proof of injury to reputation is not required because Thiokol's statement that Agee was terminated due to "unacceptable work" was defamatory per se. In Utah, a statement is defamatory per se if it amounts to a "charge of conduct that is incompatible with the exercise of a lawful business, trade, profession, or office." Allred v. Cook, 590 P.2d 318, 320 (Utah 1979). Agee's argument is foreclosed by Larson v. Sysco Corp., 767 P.2d 557 (Utah 1989), in which the Supreme Court of Utah held that a former employer's statement that the plaintiff had been fired for "poor performance" was not defamatory per se. The court stated:
 
 
 20
 [T]he type of statement required for the purposes of defamation per se with respect to the practice of a trade or profession necessarily must, as its natural and proximate consequence, compel the conclusion that plaintiff will be damaged. Speculative injury as to some future difficulty does not give rise to a cause of action as defamatory per se. The employer's notation indicating "poor performance" as the reason for [plaintiff's] termination cannot be considered a statement which will necessarily injure his trade or profession.
 
 
 21
 Id. at 560 (citations omitted).
 
 
 22
 Furthermore, "if the statement made is capable of two interpretations, one interpretation which might refer to his professional reputation and one which might refer to his personal character, it cannot be slander per se." Allred, 590 P.2d at 321. Apparently, this communication is capable of two interpretations because Helmstetter stated that nothing Sanofsky said to him "imputed a lack of professional ability and/or criminal misconduct on Mr. Agee's part." Appellee's Supp.App., Ex. C, at 7.
 
 
 23
 Thus, proof of injury to reputation is required. Agee's sole evidence of injury to reputation is Boeing's decision not to hire him. We agree with the district court that this is insufficient evidence of injury, particularly in light of the affirmative evidence to the contrary. For example, Agee admits that Boeing representatives have not altered their opinion of Agee's professional reputation; a vice-president of Boeing still holds him in "extraordinarily high esteem." See Appellee's Supp.App., Ex. F, at 43. In addition, Agee admits that Rogers told him that he would be happy to try to find Agee another job at Boeing. See id. at 38. Furthermore, Agee testified in his deposition that his colleagues in the aerospace industry continue to view him in high regard. Id. at 44-49. Accordingly, we affirm the district court's grant of summary judgment on this claim.
 
 E. Punitive Damages
 
 24
 The district court granted Thiokol's motion to strike Agee's claim for punitive damages from his Third Amended Complaint. We affirm the court's action because a court can award punitive damages only if the defendant acted with malice, see Lavicky v. Burnett, 758 F.2d 468, 477 (10th Cir.1985) (defining malice for these purposes), cert. denied, 474 U.S. 1101 (1986), and Agee did not establish that Thiokol acted with malice. Furthermore, "punitive damages may not be recovered where no actual damages are found," see Aubertin v. Board of County Comm'rs, 588 F.2d 781, 786 (10th Cir.1978), and Agee did not establish any injury to his reputation.
 
 III. CONCLUSION
 
 25
 For the reasons stated above, we AFFIRM the decision of the district court.
 
 
 
 *
 The Honorable Garnett Thomas Eisele, Senior District Judge for the United States District Court for the Eastern District of Arkansas, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 Agee contends that Dawn Reynolds, the owner of a service that supplied contract employees to Boeing, hired him, but the record reveals that Clint Rogers was responsible for hiring and that he never offered a position to Agee. Appellee's Supp.App., Ex. B, at 3
 
 
 [2]
 The parties dispute whether the conversation included remarks about Agee's involvement with the FBI. Agee alleges that Sanofsky informed Helmstetter that Agee was involved with the FBI, but Sanofsky contends that he did not become aware of Agee's involvement with the FBI until Agee filed his complaint approximately one year after his termination. See Appellee's Supp.App. at 42-43
 
 
 [3]
 In so doing, we reject Agee's contention that public policy considerations militate against the existence of a qualified privilege in this case
 
 
 [4]
 In Howcroft, an employee terminated by Mountain Bell due to misconduct later applied to Wang, who had various accounts with Mountain Bell. Mountain Bell informed Wang that the employee had left on "unhappy terms" and would not be allowed to work on the Mountain Bell-Wang account. Accordingly, Wang did not hire the employee. Id. at 1517. The court stated that
 [i]n any event, Mountain Bell would be privileged in refusing to let [the former employee] return frequently to review records at its premises, where he would have convenient access to Mountain Bell's valuable equipment and would be in direct contact with his former supervisor and fellow employees. It would be reasonable to assume that after being fired, [the former employee] might be hostile towards Mountain Bell.
 Id. at 1521.
 
 
 [5]
 Accordingly, we need not address Thiokol's contention that summary judgment was also appropriate because the communication at issue was true and accurate, and truth is an absolute defense to defamation