F I L E D
**United States Court of Appeals**
**Tenth Circuit**

**June 13, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

WORLD WIDE ASSOCIATION OF
SPECIALTY PROGRAMS, a Utah
corporation,

        Plaintiff - Appellant,

    v.

PURE, INC., PURE FOUNDATION,
INC.; SUE SCHEFF; JEFF BERRYMAN,

        Defendants - Appellees.

No. 04-4312

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D. Ct. No. 02-CV-10-PGC)**

---

Spencer C. Siebers (Fred R. Silvester, with him on the briefs), Silvester & Conroy, L.C.,
Salt Lake City, Utah, appearing for Appellant.

C. Richard Henriksen, Jr. (James E. Seaman, with him on the brief), Henriksen &
Henriksen, P.C.,  Salt Lake City, Utah, appearing for Appellees.

---

Before **TACHA**, Chief Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and
**O'BRIEN**, Circuit Judge.

---

**TACHA**, Chief Circuit Judge.

---

Plaintiff-Appellant World Wide Association of Specialty Programs and Schools

("World Wide") filed suit in federal district court against Defendants-Appellees Jeff Berryman and Sue Scheff, as well as Ms. Scheff's business, Parents Universal Resource Experts, Inc., and its successor, PURE Foundation, Inc., after Mr. Berryman and Ms. Scheff made negative remarks about World Wide on various internet sites. Prior to trial, the District Court granted summary judgment in favor of Mr. Berryman on all claims. A three-day jury trial against Ms. Scheff ended with a verdict in her favor. World Wide then moved for a new trial based on multiple claims of error. The District Court denied the motion and entered judgment against World Wide. World Wide now appeals both judgments. We take jurisdiction under 28 U.S.C. § 1291 and AFFIRM.

## I. BACKGROUND

World Wide is an association of residential treatment programs for troubled and at-risk teenagers. It does not own or operate schools; rather, it markets its members' schools to parents who might be interested in them. Ms. Scheff was one such parent. Her daughter attended a World Wide member school for nine months before Ms. Scheff decided to remove her from the program. Less than a year later, Ms. Scheff founded PURE. Like World Wide, PURE provides information about programs for families seeking help for their children; PURE-affiliated schools compete with the schools associated with World Wide. PURE schools pay Ms. Scheff a substantial sum whenever a child enrolls in its program based on her recommendation.

After the creation of PURE, Ms. Scheff used various fictitious names to post negative messages about schools for at-risk teenagers on an internet forum. Several of

the schools Ms. Scheff disparaged were schools affiliated with World Wide. Mr. Berryman also posted messages that were critical of World Wide schools. Unlike Ms. Scheff, however, Mr. Berryman never posted messages under a false name, and his career is unrelated to helping troubled teenagers and their families. Instead, he is a self-described "activist" and is simply interested in issues involving troubled teens.

Ms. Scheff and Mr. Berryman were also both members of an e-mail listserve whose members spread unfavorable information about World Wide schools to parents searching for programs for troubled teens. According to the District Court, members of the group would alert each other when they became aware of a parent considering a World Wide school, and the members would then e-mail the parent with negative messages about World Wide.

Ms. Scheff and Mr. Berryman were not the only critics of World Wide programs. Around this time, television programs and print articles were describing abuse and neglect at World Wide schools. For example, the news magazine 48 Hours reported a child's allegation that he had been handcuffed for two consecutive days and had his mouth covered in duct tape. The Miami Herald ran an article describing a mother's report that her teenager came home from a World Wide school with ringworm scars and chemical burns. Forbes Magazine reported that children were punched, kicked, thrown, and forced to sit on cement floors for twelve hours at a time. The teenager quoted in the article also claimed that students who tried to flee from such punishment were locked in a small cell for days.

After discovering the postings and e-mails sent by Ms. Scheff and Mr. Berryman, World Wide filed this suit against them seeking damages and an injunction for defamation per se, civil conspiracy, intentional interference with prospective economic advantage, and unfair business practices under the Lanham Act, *see* 15 U.S.C. § 1125(a). The District Court granted Mr. Berryman's motion for summary judgment and dismissed the entire complaint against him. Ms. Scheff stood trial, and the jury returned a unanimous verdict for her on every claim. World Wide then filed this appeal, arguing that the District Court erred in four ways: (1) designating World Wide as a limited purpose public figure for purposes of the defamation claim; (2) admitting into evidence media reports about abuse and neglect at World Wide schools; (3) requiring World Wide to prove all elements of the defamation claim by clear and convincing evidence; and (4) granting summary judgment to Mr. Berryman on the civil conspiracy claim.

## II. DISCUSSION

A.    Limited Purpose Public Figure

Under Utah law, a defamation claim requires the plaintiff to show "that defendants published the statements concerning him, that the statements were false, defamatory, and not subject to any privilege, that the statements were published with the requisite degree of fault, and that their publication resulted in damage." *West v. Thomson Newspapers*, 872 P.2d 999, 1007–08 (Utah 1994) (footnote omitted). But the First Amendment circumscribes liability for state defamation. *See New York Times v. Sullivan*, 376 U.S. 254 (1964). Specifically, if the plaintiff is a public figure, he must demonstrate by a

-4-

standard of clear and convincing evidence that the defamatory statement was made with "actual malice." *See Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 510–11 (1991). Actual malice is defined as "knowledge that [the statement] was false or with reckless disregard of whether it was false or not." *New York Times*, 376 U.S. at 280.

This rigorous standard also applies to a "limited-purpose public figure." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246 & n.3 (1986). In contrast to so-called "all-purpose public figures," who "occupy positions of such persuasive power and influence that they may hold sway on any issue with which they choose to become involved," *see Wayment v. Clear Channel Broadcasting, Inc.*, 116 P.3d 271, 279–80 (Utah 2005) (quotations omitted), a limited-purpose public figure is only a public figure with respect to a specific issue, *see id.* at 280. Indeed, the Supreme Court has described a limited-purpose public figure as one who "voluntarily injects himself . . . into a particular public controversy and thereby becomes a public figure for a limited range of issues." *See Liberty Lobby*, 477 U.S. at 246 n.3 (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974)). Utah employs a two-part test to determine whether the plaintiff is a limited-purpose public figure. First, the court must isolate the specific public controversy related to the defamatory remarks. *Wayment*, 116 P.3d at 283. Next, the court should examine the type and extent of the plaintiff's participation in that public controversy to determine whether, under *Gertz*, he has "thrust [himself] to the forefront of [the] controvers[y] in order to influence the resolution of the issues involved." *Id.*

In this case, the District Court held that World Wide was a limited purpose public

figure with respect to the public controversy of "how to deal with troubled teens." The court further noted that "World Wide's principals have given dozens of interviews to media including L.A. Times, 48 Hours, New York Times, Deseret News, Denver Rocky News, and the Miami Herald, in support of its programs." The District Court also noted that World Wide's function is to promote the "unique use of behavior modification techniques" by its affiliated schools. As the marketing arm for the various programs that it promotes, World Wide "chose to place itself in the national spotlight advocating this method."

The District Court's determination that World Wide is a limited-purpose public figure is a question of law, which we review de novo. *See Foretich v. Capital Cities/ABC, Inc.*, 37 F.3d 1541, 1551 (4th Cir. 1994); *see also Mid-Am. Pipeline Co. v. Lario Enters., Inc.*, 942 F.2d 1519, 1524 (10th Cir. 1991) (stating that federal standards of appellate review apply to diversity actions). We agree that World Wide is a limited-purpose public figure. To begin, it is clear that there exists a public controversy as to the most effective method of treating at-risk teenagers. Indeed, the record includes numerous news accounts about the public debate surrounding this question and the use of particular behavior modification programs associated with World Wide. Second, World Wide's participation in this public controversy is extensive. As the District Court pointed out, World Wide's mission as a marketing company is to take an active role in this debate by both promoting its members' programs and defending those programs that are marred by scandal. But more than merely advocating for its individual members, World Wide has

injected itself into the debate by promoting itself and all programs associated with it.  For example, one article specifically centers on whether World Wide programs are effective and quotes the president of World Wide as saying, "Parents are . . . very much in support [of World Wide programs]."  Michelle Ray Ortiz*, Behavior Modification: Salvation or Brainwashing?  Programs for Troubled Teens get Mixed Reviews*, Miami Herald, June 13, 1999, at 4B. Additionally, World Wide's public comments frequently refer to satisfied parents in response to charges of abuse.  Accordingly, it is clear that World Wide "thrust [itself] to the forefront of [this] public controvers[y] in order to influence the resolution of the issues involved." *Gertz*, 418 U.S. at 345.  The District Court did not err in deeming World Wide a limited-purpose public figure.

B.    Media Account Evidence

The District Court permitted Ms. Scheff to introduce the 48 Hours report, the Miami Herald article, and a Forbes magazine article in order to mitigate any damages attributable to her.  In other words, the District Court allowed the news accounts for the limited purpose of demonstrating that World Wide's claims of damages in the form of lost profits could have been due to those sources rather than Ms. Scheff's statements.  World Wide argues that this evidence constitutes "specific instances of conduct" and that such evidence is inadmissible in this case.

The admission of evidence is a matter within the discretion of the district court and this Court will not reverse the district court's decision except for an abuse of discretion.  *Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1253 (10th Cir. 2005).  The District Court

-7-

did not abuse its discretion here.  The Federal Rules of Evidence permit the introduction of opinion evidence, reputation evidence, and specific instances of conduct when the character of a person is an element of the claim or defense or is otherwise at issue.  *See* Fed. R. Evid. 405(b); *Shafer v. Time, Inc.*, 142 F.3d 1361, 1372 n.14 (11th Cir. 1998) ("The plain language of Rule 405(b) . . . expressly permit[s] the admission of specific acts when character is an essential element of the case.").  Although Utah has never so stated, it is well-established in other jurisdictions that the character of the plaintiff in a defamation case is at issue.  *See, e.g.*, *Gov't of Virgin Islands v. Grant*, 775 F.2d 508, 511 & n.4 (3d Cir. 1985)*; Longmire v. Ala. State Univ.*, 151 F.R.D. 414, 419 (M.D. Ala 1992); *Daniels by Glass v. Wal-Mart Stores, Inc.*, 634 So.2d 88, 93 (Miss. 1993).

Nevertheless, World Wide cites this Court's decision in *Utah State Farm Bureau Fed'n v. Nat'l Farmers Union Serv. Corp.*, 198 F.2d 20, 24–25 (10th Cir. 1952), as support for the proposition that specific instances of conduct are inadmissible for the purpose of mitigation of damages in a defamation per se case.[1]  *Utah State Farm Bureau*, however, is distinguishable.  In that case, the defendant publicly stated that the plaintiff was associated with communism.  The statement was repeated by several news sources at the behest of the defendant, and the plaintiff filed suit for libel per se.  At trial, the

---

[1]A claim of defamation per se requires the defamatory words to fall into one of four charges: (1) of criminal conduct; (2) of a loathsome disease; (3) of conduct that is incompatible with the exercise of a lawful business, trade, profession, or office; or (4) the unchastity of a woman.  *Allred v. Cook*, 590 P.2d 318, 320 (Utah 1979).  The third charge is relevant to this case.

defendant sought to introduce the very news reports the defendant sought to be published in order to demonstrate that the plaintiff's reputation had been tarnished by the reports rather than by the defendant's statement. We upheld the exclusion of the evidence, holding that publication by others of the same libelous matters charged by the defendant is generally not admissible to mitigate damages for libel per se; in so doing, we adopted the reasoning of the trial court that "it would be unfair to allow the [plaintiff] to avail [itself] of a publication which [its] agent had prepared and submitted for delivery" to the public. 198 F.2d at 25.

In this case, however, World Wide does not argue that the media accounts are of a similar nature to the defamation it argues Ms. Scheff allegedly committed—indeed, it does not argue that the media accounts are defamatory at all. Moreover, there is no indication that Ms. Scheff was in any way involved in the publication of the disputed media evidence. Accordingly, the rationale underlying this Court's decision in *Farm Bureau* is not present here. We also note that Utah permits a jury to award only "those damages which flow from the false and defamatory statement of the defendant" and explicitly prohibits the jury from awarding "damages that are the result of the plaintiff's own activities or any other person's activities." *See* Model Utah Jury Instructions 10.11. As such, we cannot conclude that the District Court abused its discretion on this basis.

Finally, World Wide argues that the media evidence should have been excluded because its probative value was substantially outweighed by the danger of unfair prejudice and confusion of the issues. *See* Fed. R. Evid. 403. "In performing the 403

-9-

balancing, the court should give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." *Deters v. Equifax Credit Info. Servs., Inc.*, 202 F.3d 1262, 1274 (10th Cir. 2000) (internal quotations omitted). "[E]xclusion of evidence under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly." *United States v. Tan*, 254 F.3d 1204, 1211 (10th Cir. 2001) (internal quotations omitted). Moreover, absent a clear abuse of discretion, we defer to the trial judge on the issue of Rule 403 balancing because of his familiarity with the full array of evidence in the case. *United States v. Keys*, 899 F.2d 983, 987 (10th Cir. 1990).

We find no abuse of discretion here. The District Court ruled that the evidence was relevant to show World Wide's damages. We also note that it was relevant to whether Ms. Scheff acted with actual malice because the reports, if relied on by Ms. Scheff, support a finding that she had a reasonable belief when making the statements. As to the question of whether the evidence was unfairly prejudicial under Rule 403, the District Court observed that in the context of the entire trial, during which both parties offered media evidence (including a television program praising World Wide programs), the media evidence "largely cancelled each other out." In addition, the court instructed the jury that the evidence was not to be considered for its truth, but was instead relevant only to the issue of determining the quantum of damages. We conclude that the potential for prejudice and confusion was not so substantial that the District Court abused its discretion in allowing these media accounts.

C.____Jury Instructions

As explained in Part A above, because the District Court held that World Wide was a limited purpose public figure, World Wide had to establish that Ms. Scheff acted with actual malice when she made the allegedly defamatory statements—in other words, that she acted with "knowledge that [the statements were] false or with reckless disregard of whether [they were] false or not." *New York Times*, 376 U.S. at 280. Although Supreme Court precedent requires a plaintiff to prove actual malice by clear and convincing evidence, *see Masson*, 501 U.S. at 510, the Court has specifically declined to decide whether the remaining elements of a defamation claim require the same level of proof or instead may be established by the lower preponderance of the evidence standard, s*ee Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 661 n.2 (1989). World Wide argues that the District Court erred by instructing the jury that Utah requires all five elements to be demonstrated by clear and convincing evidence.

"We review de novo whether, as a whole, the district court's jury instructions correctly stated the governing law and provided the jury with an ample understanding of the issues and applicable standards." *Grace United Methodist Church v. City of Cheyenne*, 427 F.3d 775, 793 (10th Cir. 2005). Even if the district court erred, we will affirm as long as the error is harmless in the context of the trial as a whole. *See id.; Lusby v. T.G. & Y. Stores, Inc.*, 796 F.2d 1307, 1310 (10th Cir. 1986) (stating that harmless error analysis applies to faulty jury instructions). "The error is harmless when the erroneous instruction could not have changed the result of the case." *Lusby*, 796 F.2d at 1310.

-11-

In this case, the District Court, after noting that Utah has not specifically determined which standard of proof applies in defamation suits when the plaintiff is a public figure, *see* Model Utah Jury Instruction § 10.2 (acknowledging that the correct standard of proof "remains unresolved"), and noting that there is a split in the circuits that have addressed the issue,[2] overruled World Wide's objection in favor of the clear and convincing standard for all of the elements. World Wide renewed this objection when it made its motion for a new trial. The District Court, in denying the motion for a new trial, held that mandating the heightened standard of proof for several elements of the defamation did not prejudice World Wide. The court reasoned that because the jury did not find in favor of World Wide on its claim for unfair business practices under the Lanham Act, which contains similar elements and only requires the plaintiff to meet the lower preponderance of the evidence standard of proof, the jury would not have found in World Wide's favor on the defamation claim even had it been instructed that only a preponderance was required.

We need not decide what standard of proof Utah courts would require because a review of the record as a whole satisfies us that even if the jury instruction was erroneous,

---

[2]The Second Circuit recently observed that the majority of state and federal courts apply the heightened clear and convincing standard to the element of falsity. *See Dibella v. Hopkins*, 403 F.3d 102, 114–15 (2d Cir. 2005); s*ee also* 1 Robert. D. Sack, *Sack on Defamation: Libel, Slander, and Related Problems* § 3.4, at 3–13 & n.46 (3d ed. 2003) (observing that most courts have required the higher standard of proof as to the element of falsity); *but see Rattray v. City of National City*, 51 F.3d 793, 801 (9th Cir. 1994) (holding that a plaintiff need only demonstrate falsity by a preponderance of the evidence).

it did not affect the outcome of the trial. As the District Court pointed out, in order for World Wide to succeed on claim under the Lanham Act, it was required to demonstrate the following elements by a preponderance of the evidence:

> (1) that the defendant made material false or misleading representations of fact in connection with the commercial advertising or promotion of its product; (2) in commerce; (3) that are either likely to cause confusion or mistake as to (a) the origin, association or approval of the product with or by another, or (b) the characteristics of the goods or services; and (4) injure the plaintiff.

*Sally Beauty Co., Inc. v. Beautyco, Inc.,* 304 F.3d 964, 980 (10th Cir. 2002). Given that World Wide failed to prove the element of falsity and injury under the lower standard of proof required for the false advertising claim, we agree with the District Court that:

> Even assuming that this instruction was inaccurate, it plainly had no bearing on the outcome of this case. World Wide's case on false advertising was significantly stronger than its defamation case. The elements of the Lanham Act are simpler and more directly connected to the evidence in this case. Moreover, the standard of proof on all the elements of the Lanham Act claim was the lower—preponderance of the evidence. If the jury could not find for World Wide on the easier-to-prove Lanham Act claim, a jury instruction on a peripheral part of the defamation claim could not have affected the outcome of the trial.

D.    Jeff Berryman

World Wide next argues that the District Court erred by granting defendant Jeff Berryman summary judgment as to its state law claim of civil conspiracy. "We review grants of summary judgment de novo to determine whether any genuine issue of material fact exists, viewing all evidence and any reasonable inferences that might be drawn therefrom in the light most favorable to the non-moving party." *Croy v. Cobe Labs., Inc.,*

345 F.3d 1199, 1201 (10th Cir. 2003). "The nonmovant must establish, at a minimum, an inference of the existence of each element essential to the case." *Id.* (quotations and citation omitted).

In order to prove a civil conspiracy, World Wide must establish the following five elements: "(1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof." *See Alta Indus. Ltd. v. Hurst*, 846 P.2d 1282, 1290 n.17 (Utah 1993) (quotations omitted). Each of these elements must be demonstrated by evidence that is clear and convincing. *Israel Pagan Estate v. Cannon*, 746 P.2d 785, 790 (Utah Ct. App. 1987). While it is not necessary to provide direct evidence of a formal agreement in order to demonstrate a meeting of the minds, "there must be substantial proof of circumstances from which it reasonably follows, or at least may be reasonably inferred, that the conspiracy existed." *Id.* at 791. "[C]onjecture and speculation alone" are not sufficient to establish that the conspiracy existed. *Id.*

The District Court found that World Wide failed to offer any evidence supporting a reasonable inference that Mr. Berryman and Ms. Scheff conspired to defame World Wide. Specifically, World Wide's evidence that Mr. Berryman, through his internet postings, agreed with Ms. Scheff that parents should be discouraged from sending their children to World Wide schools does not give rise to a reasonable inference of a meeting of the minds as to a specific object to be accomplished—namely, the defamation of World Wide. Indeed, the court observed that if any reasonable inferences were to be

-14-

drawn from the evidence, it is that Mr. Berryman and Ms. Scheff operated separately, rather than in concert.

World Wide's assertion that the District Court failed to draw the most favorable inferences from the facts is without merit. World Wide fails to point to any evidence in the record that provides substantial proof of circumstances that support a reasonable inference that Mr. Berryman and Ms. Scheff had reached an agreement as to a common objective. The record does include evidence that Ms. Scheff and Mr. Berryman shared the conviction that parents should not send their troubled teens to World Wide schools, but no jury could reasonably infer from this alone that Mr. Berryman and Ms. Scheff conspired to do an unlawful act.

### III. CONCLUSION

Because we conclude that World Wide's claims of error are insufficient to justify a new trial, and because we agree that summary judgment was warranted as to the claim of civil conspiracy against Mr. Berryman, we AFFIRM.